**Bianca ROMERO, Plaintiff,**

v.

**MASON AND HANGER–SILAS MASON COMPANY, INC., a Kentucky Corporation, et al., Defendants.**

**No. CIV 89–1274–SC.**

United States District Court,
D. New Mexico.

May 17, 1990.

Richard Rosenstock, and Asenath Kepler, Santa Fe, N.M., for plaintiff.

George Cherpelis, Timothy L. Salazar, Peggy A. Hardwick, Cherpelis Vogel and Salazar, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

CAMPOS, District Judge.

This case is before the Court on a Motion to Remand filed by Plaintiff. For the reasons contained in this Opinion, the Motion will be granted and the case will be remanded to state court.

On October 10, 1989 Plaintiff filed her complaint in Rio Arriba County District Court against her former employer, Defendant Mason and Hanger–Silas Mason Company, Inc. ("Mason and Hanger"), and three of her supervisors, Defendants Tommy Hook ("Hook"), Leonard Carter ("Carter") and Robert Everhart ("Everhart"). Mason and Hanger provides security services to Los Alamos National Laboratory ("LANL"). Plaintiff was employed as a security inspector by Mason and Hanger at LANL. Plaintiff's Complaint alleges that in 1985 she was subjected to what she believed to be sex harassment by a male supervisory official and filed a complaint about this with Hook. She thought her complaint was not adequately handled and verbally complained further about that.

Subsequently, she alleges that she was subjected to a three year campaign of harassment by various male supervisors which was ratified by the Defendants. Plaintiff alleges further that during the summer of 1988 Plaintiff sent a memorandum to Defendants regarding a male supervisor who had engaged in conduct regarding the assignment of personnel which she felt was incompetent and placed the security of LANL and the inspectors on duty in danger. She asked Everhart to take corrective action, but she alleges that instead, in retaliation for having alleged a breach of security, for having sought an investigation into that incident, and as part of the long standing campaign of retaliatory harassment directed against her since the time she complained of sexual harassment in 1985, she was terminated in August 1988. Allegedly the reasons proffered by the Defendants to justify her termination were pretext designed to conceal the retaliatory animus behind the decision.

Plaintiff has alleged three causes of action: intentional infliction of emotional distress; wrongful or retaliatory discharge; and intentional interference with contractual relations. She alleges damages for aggravation of a pre-existing ulcer condition causing pain and suffering, severe emotional distress, embarrassment and humiliation, as well as economic loss in the form of lost wages and benefits, impaired earning capacity, and so forth.

On November 16, 1989 Defendants timely removed Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1441(a) and (b) and 1446. The grounds for removal were stated as follows:

> As an employee of Mason and Hanger, the plaintiff was subject to a collective bargaining agreement containing a grievance and arbitration procedure covering discharge from employment. The grievance and arbitration procedure culminates in final and binding arbitration. Actions seeking damages on loss of employment from a position covered by the collective bargaining agreement are subject to the exclusive jurisdiction of the federal court system, and plaintiff's claim for loss of employment is completely preempted by the Labor Management Relations Act.

Notice of Removal, ¶ 4. Defendants allege this Court has jurisdiction under 29 U.S.C. § 185. This is known as § 301 of the Labor Management Relations Act of 1947 ("§ 301"), 61 Stat. 156, which provides in pertinent part:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Plaintiff was subject to the terms of a collective bargaining agreement between Mason and Hanger and the union.[1] The agreement at Article 4(b)(2) gives Mason and Hanger the right "to discharge employees for just cause." Following her termination, Plaintiff filed a union grievance pursuant to Article 7 of the agreement which was denied by Mason and Hanger apparently on procedural grounds.

■ Defendants assert that Plaintiff's state law claims are subject to complete preemption under § 301. The United States Supreme Court recently discussed the propriety of removal of state law claims pursuant to § 301. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The Court described the issue as:

> whether respondents' state law complaint for breach of individual employment contracts is completely pre-empted by § 301 ... and therefore removable to Federal District Court.

---

1. This agreement is titled: "AGREEMENT between MASON & HANGER SILAS MASON CO., INC. hereinafter referred to as THE COMPANY and LOS ALAMOS PROTECTIVE FORCE LO-

CAL NO. 69 affiliated with THE INTERNATIONAL GUARD UNION OF AMERICA both of which are collectively hereinafter referred to as THE UNION 1985–1989".

*Id.* at 388, 107 S.Ct. at 2427. The Court outlined the removal analysis. The case must be one that could have been filed in federal court. If diversity is lacking, there must be a federal question presented on the face of the well-pleaded complaint. This "well-pleaded complaint rule" makes the plaintiff the master of the claim. By exclusive reliance on state law, the plaintiff can avoid federal jurisdiction. *Id.* at 392, 107 S.Ct. at 2429.

■ Federal preemption ordinarily is raised as a defense to a complaint and does not convert a state claim into a federal one, and such a case is not removable to federal court. *Id.* at 392–93, 107 S.Ct. at 2429–2430. However a "corollary", known as the "complete preemption doctrine," exists:

> On occasion, the Court has concluded that the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' [citation omitted] Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. [citation omitted]
>
> The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA....

*Id.* at 393, 107 S.Ct. at 2430. When such a claim is stated, the case is removable to federal court irrespective of whether the federal claim appears on the face of the complaint. *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968); *Local No. 57 v. Bechtel Power Corp.,* 834 F.2d 884, 886 (10th Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988).

Not all state law claims brought by unionized employees against their employers are completely preempted by § 301 and transformed into federal claims. The Court must look at whether the claims are "founded directly on rights created by collective-bargaining agreements," *Cater-*

*pillar, Inc.* 482 U.S. at 394, 107 S.Ct. at 2431, or "substantially dependent on analysis of a collective-bargaining agreement." *Id., quoting Electrical Workers v. Hechler,* 481 U.S. 851, 859, n. 3, 107 S.Ct. 2161, 2166, n. 3, 95 L.Ed.2d 791 (1987); *see also, Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985). If so, the case is removable to federal court. However, if a plaintiff asserts state-created legal rights that exist independently of a labor agreement and plaintiff's claims do not rely on the provisions of a collective bargaining agreement, then complete preemption does not apply to the claims and they should be remanded to the state court. *See Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988) (state law claim for retaliatory discharge independent of collective bargaining agreement, no preemption). The mere fact that a plaintiff could or even did bring a claim under § 301 or file a grievance under the union agreement will not necessarily preempt a separate state tort or contract action in state court. *Caterpillar, Inc., supra,* 482 U.S. at 394–95, 107 S.Ct. at 2430–31; *Lingle,* 486 U.S. at 409–10, 108 S.Ct. at 1883–84; *Atchison, Topeka and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 564–66, 107 S.Ct. 1410, 1415–16, 94 L.Ed.2d 563 (1987).

WRONGFUL OR RETALIATORY DISCHARGE CLAIM.

■ Plaintiff alleges she was fired wrongfully and in retaliation for complaining about safety violations and about sexual harassment. New Mexico recognizes this cause of action where an employee has been discharged in retaliation for doing something that public policy encourages. *Vigil v. Arzola,* 102 N.M. 682, 686–90, 699 P.2d 613, 617–21 (1983), *rev'd on other grounds,* 101 N.M. 687, 687 P.2d 1038 (1984); *Chavez v. Manville Products Corp.,* 108 N.M. 643, 777 P.2d 371, 375 (1989).

In *Lingle,* the Supreme Court held a claim for retaliatory discharge under Illinois law was not preempted by § 301. The elements of the tort did not require the

trier of fact to interpret any term of a collective bargaining agreement.

> Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge [citation omitted]; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is 'independent' of the collective bargaining agreement in the sense that matters for § 301 preemption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

*Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882. Even though the state law analysis might involve the same factual considerations as the factual inquiry under the collective bargaining agreement of whether there was just cause for the discharge, that did not make the state law claim dependent on the union contract. *Id.* at 408–410, 108 S.Ct. at 1882–84. *Accord, Pantoja v. Texas Gas & Transmission Corp.*, 890 F.2d 955 (7th Cir. 1989) (retaliatory discharge claim for filing federal lawsuit not preempted by federal labor law). Moreover, it is permissible that the trier of fact may have to make reference to the collective bargaining agreement to aid in determining damages. *Id.* 486 U.S. at 413, n. 12, 108 S.Ct. at 1885, n. 12.

Defendants in this case argue that the Court (or trier of fact) must necessarily interpret the terms of the collective bargaining agreement in deciding the retaliatory discharge claim because each of the alleged public policies is articulated in provisions of the agreement. For example, Plaintiff alleges violation of the policies regarding the right to complain of class-based discrimination, harassment and unsafe working conditions, and regarding fair dealing between employees and employers.

(Complaint, ¶ 22). Article 7 of the union contract, containing a grievance and arbitration procedure, gives employees the right to complain. Article 21 recognizes the company's obligation not to tolerate any type of discrimination. Article 20 refers to the health and safety of employees. Finally, Article 4 which articulates the company's management rights provides for the company's right to assign work and to maintain security.

Defendants' argument is not persuasive. Plaintiff has not alleged a violation of the policies contained in the collective bargaining agreement. She relies only on violation of alleged policies of the State of New Mexico.[2] After *Lingle* it is irrelevant whether resolution of a state law claim implicates the same factual analysis as would a grievance filed under a collective bargaining agreement. A state law claim is "independent" of a labor contract and not preempted where "resolution of the state law claim does not require construing the collective bargaining agreement." *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1330 (6th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989) (quoting *Lingle*). Furthermore, it is well established that a proffered defense that an employer's conduct was authorized or required by a collective bargaining agreement is not a basis to allow removal of a state claim of retaliatory discharge. In reversing the district court and ordering remand to state court, the *Smolarek* court, citing *Caterpillar Inc. v. Williams, supra*, 482 U.S. at 398–99, 107 S.Ct. at 2432–33, stated:

> Chrysler may, in its own defense, assert that its treatment of Smolarek was allowed or required by the terms of the collective bargaining agreement and therefore was not based on Smolarek's handicap. The assertion of a defense requiring application of federal law does not support removal to federal court. . . .

*Smolarek*, 879 F.2d at 1333.

The Court concludes that resolution of Plaintiff's retaliatory discharge claim will

---

**2.** This Court must not decide whether Plaintiff's claim has merit under state case law, or even whether she has properly stated a claim under state law. *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1331 (6th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989).

not require the trier of fact to construe the collective bargaining agreement, and therefore that such claim is independent of the labor contract between the union and the company and not completely preempted by § 301.[3]

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.

■ A similar analysis applies in the case of the tort of intentional infliction of emotional distress. The standard is that Plaintiff must prove she suffered severe emotional distress as a result of Defendants' extreme and outrageous conduct, and that such conduct was intentional or reckless. *Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 773 P.2d 1231, 1239 (1989); *Dominguez v. Stone,* 97 N.M. 211, 214, 638 P.2d 423, 426 (Ct.App.1981). The conduct challenged by Plaintiff relates to an alleged three year campaign of harassment stemming from her complaint about sexual harassment by a male supervisor. The harassment allegedly continued and intensified after Plaintiff made a written report about what she believed to be incompetent assignment of personnel which caused a security threat.

Defendant again argues that Plaintiff will have to present evidence requiring an analysis of the collective bargaining agreement. Article 4 reserves to the company the right to determine internal security policies, to assign work, to discipline and discharge employees, to determine personnel by which operations shall be conducted and generally to carry out the company mission. Defendants' assertion that Plaintiff must establish that the collective bargaining agreement did not authorize the conduct at issue is incorrect. At most, Defendants might defend on the basis that they were in compliance with the terms of the union contract.

Articles 20 and 21 recognize the company's obligations to fulfill health and safety responsibilities as well as responsibilities to ensure a working environment free of discrimination. Article 7 contains the procedure for employees to file grievances. Defendants claim that Plaintiff must prove the company exceeded merely carrying out its contractual duties under Articles 20 and 21, and must address her own responsibilities under Article 7 to grieve any contract violation, any question of interpretation or application of the contract, and her "obligation" to submit to binding arbitration. This too is incorrect. Once again Defendants have pointed to possible defenses they might assert to Plaintiff's tort claim for intentional infliction of emotional distress rather than to matters that must be proved by Plaintiff.

In *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the Supreme Court held a state law claim for emotional distress against a union was not preempted by the National Labor Relations Act. *See also, Atchison, Topeka and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) (emotional distress claim under FELA for failure to provide a safe work place not precluded by arbitration provisions of Railway Labor Act); *Linn v. United Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (defamation claim not preempted). The Ninth Circuit has stated:

> Like the tort of defamation, intentional infliction of emotional distress hinges on state of mind, causation and injury. It requires extreme and outrageous behavior.... The collective bargaining agreement does not envision such behavior, and its grievance mechanism is not equipped to redress it. In reviewing whether there was just cause to suspect [plaintiff], the grievance committee would have no authority to decide whether [the company] had acted outrageously.... Moreover, it could provide no remedy for such behavior.

*Tellez v. Pacific Gas and Electric Co., Inc.,* 817 F.2d 536, 539 (9th Cir.), *cert. denied,* 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987). As in *Lingle, supra,*

---

**3.** The question of whether a state claim is subject to the complete preemption doctrine is different from the question of whether the defense of preemption has merit. *See Caterpillar, Inc.,* 482 U.S. at 397–98, 107 S.Ct. at 2432–33.

proof of an emotional distress claim depends on showing motivation or state of mind, and typically will not require interpretation of the terms of a collective bargaining agreement.

The Court concludes that resolution of Plaintiff's tort claim for intentional infliction of emotional distress will not require the trier of fact to construe the collective bargaining agreement, and that such claim is independent of the labor contract between the union and the company. Therefore, it is not preempted by § 301.

### INTERFERENCE WITH CONTRACT RELATIONS CLAIM.

 This is a claim against the three individual Defendants, Hook, Carter and Everhart for allegedly "intentionally and improperly interfer[ing] with the performance of the employment contract existing between Plaintiff and Mason and Hanger by inducing or otherwise causing Mason and Hanger to terminate its contract with Plaintiff for the improper reasons alleged above." Complaint, ¶ 25. Plaintiff also alleges that the individual Defendants "were not acting for a bona fide corporate or organizational purpose and said Defendants were not serving the corporate interest in good faith by acting out of such wrongful motivation." Complaint, ¶ 24.

To prove this claim, Plaintiff must show the individual Defendants intentionally and improperly interfered with the performance of the contract that existed between herself and her employer by inducing the employer to terminate her. Restatement (Second) of Torts, § 766 (1977). Determination of whether a defendant acted improperly depends on consideration of the factors set forth in Restatement, § 767 (the state of mind factors). Defendants argue, however, that this cause of action places the existence and terms of the contractual relationship created by the collective bargaining agreement at the center of Plaintiff's proof. She must prove the existence of the contract, that certain terms of the contract were not performed and that the Defendants' acts had no justification or, as Plaintiff alleged, were taken for no bona fide corporate or organizational purpose.

Not all contract-related claims are preempted. For example, where plaintiffs alleged breach of an employment contract that arose independently of the union contract, that claim was not preempted. *Caterpillar, Inc., supra.* And where plaintiff union members claimed breach of contract premised on an alleged violation of an employee policy book promulgated by the employer, their claim was not preempted by any federal labor law. *Montano v. Zia Co.,* No. CIV–84–866–JC, USDC, DNM (Order of July 21, 1987).

Plaintiff argues that its interference claim is based not on interference with the union contract, but rather on interference with an implied contract, implied from personnel policies, practices, actions, communication and written procedures promulgated by the company. Plaintiff argues that the implied contract was created by written and/or oral promises outside of the labor contract. They include the issuance of an employee discipline policy setting forth the offenses which merit discipline and limiting the type of discipline the company may impose for a particular offense, an Affirmative Action Plan, and other written procedures and rules promulgated by the company which are not part of or incorporated into the labor contract. New Mexico recognizes implied contracts. *Kestenbaum v. Pennzoil Co.,* 108 N.M. 20, 766 P.2d 280, 284 (1988), *cert. denied* —— U.S. ——, 109 S.Ct. 3163, 104 L.Ed.2d 1026 (1989) (implied contract may be created through means other than an employee handbook or manual, such as oral statements, personnel policies, actions, communications, practices or procedures).

The Complaint does not allege the existence of the written union contract as the source of Plaintiff's contractual rights. If it did, then Defendants' arguments might have some merit. Even though Plaintiff does not allege the existence of an implied contract, it is not for this Court to test the sufficiency of the claim. The Court concludes that the Third Cause of Action does not rely on the existence or terms of, or require the analysis of the collective bargaining agreement and is sufficiently inde-

pendent of it so that the claim for intentional interference with contract relations is not completely preempted by § 301.

## ORDER

For the reasons contained in this Opinion, Plaintiff's Motion to Remand shall be and is hereby GRANTED. It is, therefore,

ORDERED, ADJUDGED AND DECREED that this case shall be remanded in its entirety to the First Judicial District Court, County of Rio Arriba, State of New Mexico, and it is further

ORDERED, ADJUDGED AND DECREED that pursuant to 28 U.S.C. § 1447(c) Defendants shall pay to Plaintiff just costs and any actual expenses, including attorney fees incurred as a result of this removal. The local rules of this Court regarding the award of costs and attorney fees will apply.