*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PIERRE BERNARD, | ) | |
| | ) | Supreme Court No. S-15592 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-13-08887 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA AIRLINES, INC., | ) | |
| | ) | No. 7082 - February 12, 2016 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Vikram N. Chaobal, Anchorage, and Frederick W. Triem, Petersburg, for Appellant. Gregory S. Fisher and Elizabeth P. Hodes, Davis Wright Tremaine LLP, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

A former airline employee sued his former employer for wrongful termination without first attempting to arbitrate his claims under the provisions of a collective bargaining agreement subject to the federal Railway Labor Act. The superior court dismissed the employee's complaint for failure to exhaust his contractual remedies. It also denied him leave to amend his complaint a second time — to add a claim against

his union for breaching its duty of fair representation — on the ground that the six-month limitations period for such claims had expired. We hold that the employee's right to bring his claims in state court was not clearly and unmistakably waived under the collective bargaining agreement and he therefore should have been allowed to pursue them. We agree with the superior court, however, that the employee's claim that the union breached its duty of fair representation was time-barred. We therefore affirm in part and reverse in part the judgment of the superior court.

## II.    FACTS AND PROCEEDINGS

In June 2011 Alaska Airlines charged that Pierre Bernard, one of its baggage handlers, had taken part in drafting and sending a threatening text message to a co-worker and had then deleted a recorded conversation relevant to the ensuing investigation. The company terminated Bernard's employment.

The employment's terms and conditions were governed by a collective bargaining agreement (sometimes abbreviated "CBA") negotiated by Bernard's union, the International Association of Machinists and Aerospace Workers, pursuant to the federal Railway Labor Act (RLA).[1] The collective bargaining agreement provided a three-stage process for grieving termination decisions. The first two stages consisted of an "initial hearing" and a "secondary hearing," each presided over by a representative of Alaska Airlines, with a union representative in attendance to represent the employee. The result of a secondary hearing could be appealed to the System Board of Adjustment, a three-member arbitration panel consisting of "a Company member, a Union member[,] and a neutral referee."[2]

---

[1]    45 U.S.C. §§ 151-188 (2012).

[2]    *See* 45 U.S.C. § 153(i) (2012) ("[F]ailing to reach an adjustment[,] . . . disputes may be referred by petition of the parties or by either party to the appropriate

(continued...)

Bernard initiated the grievance process through his union, and over the next two months Alaska Airlines held two hearings, each time in the presence of a union representative. The presiding company officers issued written decisions after both hearings upholding Bernard's termination — though the second decision, in August, offered him "the opportunity to resign in lieu of termination," an offer he did not accept.

A few weeks after the August decision a union representative wrote to Bernard informing him that "[i]f the Union brings your case to an arbitration, there is paperwork you must fill out," and advising him that he "may acquire a lawyer at any time." The union's written notice to Bernard that it had decided not to appeal is dated November 14, 2011, nearly two months after the 30-day appeal deadline had expired. The union informed Bernard that it had thoroughly reviewed his case, concluded that "we could not sustain our position before the System Board of Adjustment," and closed its file.

In August 2013, two years after the unappealed decision of the secondary hearing, Bernard filed a complaint against Alaska Airlines in the superior court. He alleged a background to his termination: that in 2009 he had filed a sexual harassment complaint against a supervisor and was ostracized as a result; that he was later unfairly disciplined after a co-worker imposed upon him with inappropriate personal demands; and that the allegedly threatening text message for which he was discharged in 2011 had actually been "sent in jest" in response to "a hostile and threatening text from another employee." He alleged that his termination was in retaliation for his reports of sexual harassment and therefore violated the covenant of good faith and fair dealing.

---

[2](...continued)
division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.").

Alaska Airlines filed a motion to dismiss under Alaska Civil Rule 12(b)(1),[3] arguing that (1) the RLA preempted Bernard's claim; and (2) even if not preempted, his claim was precluded because he had failed to exhaust available remedies under the collective bargaining agreement.

Bernard opposed the motion and filed an amended complaint, adding allegations that Alaska Airlines had violated a state employment discrimination statute[4] and public policy. Alaska Airlines renewed its motion to dismiss on the exhaustion-of-remedies theory, arguing that because the collective bargaining agreement incorporated the company's anti-discrimination policies, Bernard was required to seek relief through contractual remedies even for statutory claims, which he had not done.

Bernard moved for leave to file a second amended complaint, this time to add a claim that the union had breached its duty of fair representation by failing to notify him of its decision not to pursue arbitration with the System Board of Adjustment until after the appeal deadline. The superior court denied Bernard leave to add this claim, concluding that it was barred by the six-month statute of limitations for "hybrid claims."[5]

---

[3] "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter . . . ." Alaska R. Civ. P. 12(b)(1).

[4] *See* AS 18.80.220(a) ("[I]t is unlawful for . . . (4) an employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against a person because the person has opposed any practices forbidden under AS 18.80.200-18.80.280 or because the person has filed a complaint, testified, or assisted in a proceeding under this chapter.").

[5] A "hybrid claim" in this context is one "in which an employee must prove both that the employer breached a provision of the collective bargaining agreement and
(continued...)

The superior court also dismissed Bernard's state law claims under Rule 12(b)(1) for lack of subject matter jurisdiction. It first decided that his state law claims were "not pre-empted to the extent that they plead an independent state law claim for retaliatory discharge" but were preempted "[t]o the extent they rest on contractual rights that Mr. Bernard enjoyed under the CBA." The court went on to conclude that to the extent not preempted, Bernard's state law claims were nonetheless subject to the mandatory arbitration provisions of the collective bargaining agreement because he had clearly and unmistakably waived his right to pursue judicial remedies instead. The court held that he had "a personal right to submit his claim to the National Railroad Adjustment Board (NRAB)" but had not done so, and that his alleged ignorance of this avenue was not an excuse.

Bernard appeals.

## III.   STANDARDS OF REVIEW

The superior court dismissed Bernard's action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). "We review de novo a superior court's decision to dismiss a complaint for lack of subject matter jurisdiction."[6] "In exercising our

---

[5](...continued)
that the union breached its duty of fair representation in order to prevail." *Schaub v. K&L Distribs., Inc.*, 115 P.3d 555, 564 (Alaska 2005) (recognizing six-month limitations period for such claims); *see also* 29 U.S.C. § 160(b) (2006) ("[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board."). A hybrid claim may be brought against the union, the employer, or both. *Schaub*, 115 P.3d at 565.

[6]     *Healy Lake Vill. v. Mt. McKinley Bank*, 322 P.3d 866, 871 (Alaska 2014) (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1033 (Alaska 2004)).

independent judgment, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[7]

This appeal also requires us to interpret a collective bargaining agreement. "Contract interpretation presents a question of law that we review de novo."[8] "When interpreting contracts, the goal is to 'give effect to the reasonable expectations of the parties.'"[9] "In determining the intent of the parties the court looks to the written contract as well as extrinsic evidence regarding the parties' intent at the time the contract was made."[10] "Where there is conflicting extrinsic evidence the court, rather than the jury, must nonetheless decide the question of meaning except where the written language, read in context, is reasonably susceptible to both asserted meanings."[11]

Finally, this appeal requires us to interpret the RLA. "We decide questions of law, including statutory interpretation, using our independent judgment. We will adopt the most persuasive rule of law in light of precedent, reason, and policy."[12] "This

---

[7] *Id*. (quoting *John v. Baker*, 982 P.2d 738, 744 (Alaska 1999)).

[8] *Larsen v. Municipality of Anchorage*, 993 P.2d 428, 431 (Alaska 1999); *see also Alaska Hous. Fin. Corp. v. Salvucci*, 950 P.2d 1116, 1119 (Alaska 1997).

[9] *Larsen*, 993 P.2d at 431 (quoting *Stepanov v. Homer Elec. Ass'n*, 814 P.2d 731, 734 (Alaska 1991)).

[10] *Municipality of Anchorage v. Gentile*, 922 P.2d 248, 256 (Alaska 1996).

[11] *Johnson v. Schaub*, 867 P.2d 812, 818 (Alaska 1994) (quoting *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.*, 778 P.2d 581, 584 (Alaska 1989)).

[12] *Donahue v. Ledgends, Inc.*, 331 P.3d 342, 346 (Alaska 2014) (internal citations omitted).

requires us, when interpreting statutes, to 'look to the meaning of the language, the legislative history, and the purpose of the statute.' "[13]

## IV. DISCUSSION

### A. Bernard's Claims Were Not Subject To Arbitration.

The superior court ruled that Bernard's claims were preempted to the extent they relied on the contract and not preempted to the extent they existed independent of the contract. Because it went on to hold that Bernard was required to exhaust his contractual remedies as to both kinds of claims, it did not need to differentiate further between the preempted claims and the non-preempted claims. But because we hold that Bernard was *not* required to exhaust his contractual remedies, we must begin by deciding whether any of his claims were preempted.

#### 1. The RLA did not preempt Bernard's state law claims.

The RLA provides a "mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes."[14] The first class, deemed "major" disputes, relates to "the formation of collective agreements or efforts to secure them."[15] The second class, deemed "minor" disputes, includes "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation."[16] Alaska Airlines contends that the conflict over Bernard's firing is a minor dispute that may be

---

[13] *Id.* (quoting *ASRC Energy Servs. Power & Commc'ns, LLC v. Golden Valley Elec. Ass'n*, 267 P.3d 1151, 1157 (Alaska 2011)).

[14] *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (quoting 45 U.S.C. § 151a (1988)).

[15] *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302 (1989) (quoting *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)).

[16] *Norris*, 512 U.S. at 253 (quoting *Bhd. of R.R. Trainmen v. Chicago River & Indiana R.R. Co.*, 353 U.S. 30, 33 (1957)).

resolved only through the mechanisms provided by the RLA, including the collective bargaining agreement's internal grievance process culminating in arbitration before a System Board of Adjustment. We agree with the superior court, however, that "the underlying conduct for [Bernard's] claims [was] that Alaska [Airlines] allegedly retaliated against Mr. Bernard for reporting sexual harassment," and that these claims were not preempted to the extent they pleaded an independent state law claim for retaliatory discharge.

As a general rule, "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA."[17] In the wrongful termination context, a state law claim may be "pre-empted, *not* because the RLA broadly pre-empts state-law claims based on discharge or discipline, but because the employee's claim was firmly rooted in a breach of the CBA itself."[18] But when the collective bargaining agreement is not the "only source" of the right against wrongful termination — for example, when an employer has a state law obligation not to fire an employee for retaliatory reasons or in violation of public policy — the state law cause of action is not preempted.[19]

Alaska Airlines argues that "garden variety state-law claims for wrongful termination are absolutely preempted under the Railway Labor Act." Citing *Andrews v.*

---

[17]    *Id*. at 256; *see also Terminal R.R. Ass'n of St. Louis v. Bhd. of R.R. Trainmen*, 318 U.S. 1, 7 (1943) ("[I]t cannot be that the minimum requirements laid down by state authority are all set aside. We hold that the enactment by Congress of the [RLA] was not a pre-emption of the field of regulating working conditions themselves . . . .").

[18]    *Norris*, 512 U.S. at 257 (emphasis in original).

[19]    *See Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 324 (1972); *Norris*, 512 U.S. at 258.

*Louisville & Nashville Railroad Co.*, it contends that federal law requires this conclusion and that subsequent cases have applied little more than "gloss" over an otherwise sweeping rule.[20] But *Andrews* did not broadly limit independent state law claims for wrongful termination.[21] In *Andrews* it was "conceded by all that the *only* source of [the employee's] right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement between the employer and the union."[22]

We discussed this issue in *Norcon, Inc. v. Kotowski*, in which we observed that the federal Labor Management Relations Act[23] does not preempt state law claims when they are "neither founded on rights created by a CBA nor dependent on the

---

[20] *Compare Andrews*, 406 U.S. at 324 (" '[W]rongful discharge' implies some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will. . . . [T]he only source of petitioner's right not to be discharged . . . is the collective-bargaining agreement between the employer and the union."), *with Norris* 512 U.S. at 258 ("Here, in contrast [to *Andrews*], the CBA is not the 'only source' of respondent's right not to be discharged wrongfully.").

[21] *Cf. Norris* 512 U.S. at 258 (noting that RLA does not preempt all state law claims for wrongful termination); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987) (noting that preemption of employment standards "should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State"); *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 565 (1987) ("[N]otwithstanding the strong policies encouraging arbitration, 'different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.' " (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 737 (1981))).

[22] *Andrews*, 406 U.S. at 324 (emphasis added).

[23] 29 U.S.C. §§ 141-44, 167, & 171-87 (2012).

analysis or interpretation of the CBA."[24]  *Norcon* involved the Labor Management Relations Act rather than the RLA, but the United States Supreme Court applies that same preemption analysis to both, so we do the same.[25]  We concluded in *Norcon* that "[s]tates are free to create and enforce causes of action that vest rights in workers, so long as these rights can be adjudicated without having to interpret collective bargaining agreements."[26]  We specifically addressed an employee's claim that her termination was due to sexual discrimination in the workplace in violation of AS 18.80.220, concluding that the claim was not preempted because "[t]he question of whether [the employee's] transfer and termination violated AS 18.80.220 'was a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement.' "[27] We held that "[t]he right to a non-discriminatory workplace conferred upon [the employee] by AS 18.80.220 could not be waived by any contrary contractual provision" and therefore "no need exists to consult the CBA to determine [the right's] meaning."[28] We went on to conclude that our decision was "consistent with the Supreme Court's reasoning in *Hawaiian Airlines, Inc. v. Norris,*" in which "the Court observed that purely factual questions about an employer's conduct and motives do not require interpretation of the CBA to answer."[29]

---

[24]     *Norcon, Inc. v. Kotowski*, 971 P.2d 158, 165 (Alaska 1999).

[25]     *Norris*, 512 U.S. at 260.

[26]     *Norcon*, 971 P.2d at 164.

[27]     *Id.* at 165 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994)).

[28]     *Id.*

[29]     *Id.* at 166 (citing *Norris*, 512 U.S. at 261).

In this case, Bernard's first amended complaint raised three state law claims: (1) wrongful termination in violation of AS 18.80.220; (2) wrongful termination in violation of public policy;[30] and (3) wrongful termination in breach of the covenant of good faith and fair dealing.[31] Each claim, as the superior court noted, alleged the same underlying conduct: that Alaska Airlines retaliated against Bernard for having reported sexual harassment. The first two claims depend on state law and the employer's motives — not the terms of the collective bargaining agreement — and are therefore not preempted by the RLA. The third claim, for breach of the implied covenant, does depend in part on the parties' contractual relationship.[32] But we held in *Norcon* that such claims are not preempted either, at least in the context of claims for retaliatory discharge. We held that "[n]othing in the CBA could have altered, circumscribed, or defined" the employee's right to report safety violations, drawn from state public policy, and "[b]ecause the contours of this right are not defined through the bargaining process, they can be traced out without any reference to the CBA."[33]

---

[30] We note that Bernard's public policy-based and statutory claims are probably redundant. *See Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 813 n.13 (Alaska 2005) (noting that "we have typically declined to recognize independent torts based on contravention of public policy where there are adequate legal alternatives").

[31] Bernard also asserted a count for punitive damages based on allegedly outrageous conduct, but recovery of punitive damages depended on proof of one of his three substantive claims. *See DeNardo v. GCI Commc'n Corp.*, 983 P.2d 1288, 1292 (Alaska 1999) ("A punitive damages claim cannot stand alone.").

[32] *See Castle Props., Inc. v. Wasilla Lake Church of the Nazarene*, 347 P.3d 990, 997 (Alaska 2015) ("Under Alaska law, every contract has an implied covenant of good faith and fair dealing . . . .").

[33] *Norcon*, 971 P.2d at 167.

An employee's right to report sexual harassment without fear of retaliation by the employer is grounded in the same public policy we discussed in *Norcon*, made explicit in the same statute, AS 18.80.220.[34] And state public policy provides the same remedy in the form of a claim for retaliatory discharge, a claim that depends largely on proof of the employer's actions and motivations rather than an interpretation of the collective bargaining agreement.[35] Because the collective bargaining agreement is not the only source of the right against wrongful discharge at the base of Bernard's three claims, the RLA did not preempt them.[36]

---

[34] AS 18.80.220(a)(4) provides that "it is unlawful for . . . an employer . . . to discharge, expel, or otherwise discriminate against a person because the person has opposed any practices forbidden under AS 18.80.200 – 18.80.280." AS 18.80.220(a)(1) bars workplace discrimination on the basis of sex; it applies to claims of sexual harassment. *French v. Jadon, Inc.*, 911 P.2d 20, 28 (Alaska 1996). Discharging an employee in retaliation for the reporting of sexual harassment is therefore a violation of AS 18.80.220(a)(4).

[35] As noted above, the collective bargaining agreement at issue here incorporated Alaska Airlines' policy against employment discrimination, and Bernard's discrimination claim could be characterized as being founded on the contract. But the fact that a claim involves a violation of a privately enforced policy is irrelevant to the extent that a statute independently favors the same policy. *See Knight v. Am. Guard & Alert, Inc.*, 714 P.2d 788, 792 (Alaska 1986); *Pub. Safety Emps. Ass'n v. State*, 658 P.2d 769, 774-75 (Alaska 1983).

[36] *See, e.g.*, *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 775-76 (4th Cir. 1998) (predicting that Maryland law would recognize a claim for wrongful discharge based on an employee's complaints of sexual harassment and holding that such a claim is not preempted by the LMRA because it "primarily concerns the conduct of the employee and the conduct and motivation of the employer" rather than an interpretation of the collective bargaining agreement); *Romero v. Mason & Hanger-Silas Mason Co.*, 739 F. Supp. 1472, 1475-77 (D.N.M. 1990) (noting that New Mexico recognizes causes of action for wrongful and retaliatory termination based on "complaining about safety violations and about sexual harassment" and that the claim is independent of the
(continued...)

## 2 The CBA did not clearly and unmistakably waive the right to sue in court.

An employee may have the right to pursue a claim in state court — because the claim is not preempted by the RLA — and still waive that right by agreeing to arbitrate such claims instead.[37] Bernard argues that the collective bargaining agreement at issue here does not waive his right to pursue his state law claims in court, and we agree.

"We will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be *clear and unmistakable*."[38] In *Hammond* we adopted the two-pronged test used by the Second and Fourth Circuits, and later the United States Supreme Court, for finding a "clear and unmistakable" waiver: The contract "must either (1) contain an arbitration clause including 'a provision whereby employees specifically agree to submit all federal causes of action arising out of their

---

[36](...continued) collective bargaining agreement, and holding that the claim is therefore not preempted by the LMRA); *Foster v. Albertsons, Inc.*, 835 P.2d 720, 726-27 (Mont. 1992) (noting that "Montana has recognized a common law cause of action for retaliatory discharge related to sexual harassment" and that proving such a claim involves "purely factual questions" that "pertain[] to the conduct of the [employee] and the conduct and motivation of the [employer]" rather than "turn[ing] on the meaning of any term of the collective bargaining agreement," and holding that the claim is therefore not preempted by the LMRA).

[37] *Hammond v. State, Dep't of Transp. & Pub. Facilities*, 107 P.3d 871, 877 (Alaska 2005).

[38] *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983) (emphasis added); *see also Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79 (1998) ("[A]ny CBA requirement to arbitrate [a statutory claim] must be particularly clear.").

employment to arbitration' or (2) contain 'an explicit incorporation of the statutory anti-discrimination requirements in addition to a broad and general arbitration clause.' "[39]

The collective bargaining agreement at issue here does not meet either prong of the *Hammond* test. First, it lacks "a provision whereby employees specifically agree to submit all . . . causes of action arising out of their employment to arbitration." Grievances that may "result[] in the loss of pay (suspension and discharge)" are addressed, as described above, through a two-stage hearing process followed by an appeal to arbitration before the System Board of Adjustment. According to the collective bargaining agreement, "[t]he Board shall have jurisdiction over disputes between any employee or employees covered by this Agreement and the Company growing out of grievances or out of interpretation or application of any of the terms of this Agreement." Although "disputes . . . growing out of grievances" is a very broad category, the agreement further explains the purpose of the Board as "adjusting and deciding disputes or grievances which may arise under the terms of this Agreement, and *which are properly submitted to it* after exhausting the procedure for settling disputes." (Emphasis added.) "Proper submission" is further defined: Describing the results of the secondary hearing, the agreement provides that "[i]n the event the issue(s) is not settled satisfactorily, *the General Chair may appeal to arbitration* within thirty (30) calendar days"; and defining the duties of the System Board of Adjustment, the agreement provides that "[t]he Board shall consider any dispute properly submitted to it *by the General Chair of the Union or his/her designee*, or by the Representative of the Company." (Emphasis added.) The agreement thus emphasizes repeatedly that, on the employee side, only appeals to arbitration taken by the union or its representatives are contemplated. There is nothing in the agreement's plain language that would lead an

---

[39] *Hammond*, 107 P.3d at 877 (quoting *Rogers v. N.Y. Univ.*, 220 F.3d 73, 76 (2d Cir. 2000)).

employee to believe that the Board was authorized to consider any appeals other than those that were "properly submitted to it" by the union, the company, or their authorized representatives.[40]

The contract's apparent foreclosure of a grievant's right to arbitrate if the union declines to do so on the grievant's behalf is inconsistent with the first prong of the *Hammond* test, which requires the employee's specific agreement to submit all claims to arbitration; it is also inconsistent with the second prong of the *Hammond* test, which requires "a broad and general arbitration clause."[41] We emphasize that we are not deciding here whether Bernard, regardless of the language of his collective bargaining agreement, had an individual right to pursue arbitration that he failed to exercise, as Alaska Airlines urges and as the superior court held. We have not decided whether the RLA provides a personal right to demand arbitration when the union fails to do so, and

---

[40] Neither party argues that the employee himself could be the "designee" of the union's general chair for purposes of taking an appeal without union backing, and the record in this case does not show that such a designation was considered. Alaska Airlines argues that Bernard's right to submit any claim to the Board is evident in the following language from the collective bargaining agreement: "Employees . . . may be represented at Board hearings by such person or persons as they may choose and designate." Alaska Airlines suggests that this language, coupled with the union's explicit notice to Bernard that he could "acquire a lawyer at any time," clarified Bernard's independent right and is consistent with the first prong of the *Hammond* test. But Bernard's right to representation does not clearly state that he may "properly submit" any claim to the System Board of Adjustment on his own. Notably, the agreement further provides that Bernard's chosen representative must be selected "in conformance with the constitution of the Union," and the union accordingly informed Bernard that it "must give its blessing to have an attorney represent [him] before the System Board of Adjustment."

[41] *Hammond*, 107 P.3d at 877 (quoting *Rogers*, 220 F.3d at 76).

federal courts are divided.[42]  But that issue is irrelevant to our resolution of Bernard's case, which turns on the language of his collective bargaining agreement and whether it shows a "clear and unmistakable" waiver of his right to pursue state law claims in state court.

The collective bargaining agreement at issue here also lacks the "explicit incorporation of the statutory anti-discrimination requirements" necessary to the second prong of the *Hammond* test.[43]  As noted above, the agreement included a general provision incorporating Alaska Airlines' other rules and policies, stating that employees "shall be governed by the Company's General Policy and Operating Manuals, and the System Regulation and Customer Service Manuals and by all other applicable rules, regulations and orders issued by properly designated authorities of the Company, which are not in conflict with the terms of this Agreement."  Among these incorporated policies is the company's Code of Conduct and Ethics, which includes this anti-discrimination provision:

> The Company is an equal opportunity employer.  This means the Company is committed to providing equal consideration in all employment decisions (including, for example, recruiting, hiring, training, promotions, pay practices, benefits, disciplinary actions and terminations) without regard to age, race, color, gender, national origin, religion, marital status, sexual orientation, disability, veteran status or any other classification protected by federal, state, or local laws.

---

[42]    *Compare Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608-09 (8th Cir. 2004) (holding that 45 U.S.C. § 153(j) does not provide independent right to appeal to the System Adjustment Board, but collective bargaining agreement may), *with Santiago v. United Air Lines, Inc.*, 969 F. Supp. 2d 955, 966 (N.D. Ill. 2013) (holding that while section 153(j) does not provide independent right to appeal to the System Adjustment Board, 45 U.S.C. § 184 (2011) does).

[43]    *Hammond*, 107 P.3d at 877 (quoting *Rogers*, 220 F.3d at 76).

The provision goes on to say that the company "will not tolerate any form of discrimination or harassment that encourages or could create an offensive, hostile or intimidating work environment," and that "[a]cts of discrimination and harassment not only violate our Company values and policies, but may also violate federal, state, and local laws and are strictly prohibited." Other "System Regulations" set out general standards of expected conduct. None of the incorporated provisions to which Alaska Airlines directs us expressly cites Alaska law.

More importantly, the collective bargaining agreement expressly retains Alaska Airlines' right to modify the referenced policies and codes of conduct unilaterally "during the term of the Agreement." Even assuming that the agreement contains, by its reference to general policies and codes of conduct, "an explicit incorporation of the statutory anti-discrimination requirements" of Alaska law,[44] we could not find a "clear and unmistakable" waiver of the employee's right to pursue state law claims in state court when the employer retains a unilateral right to modify or eliminate the language on which the waiver is based.

We hold that the collective bargaining agreement did not clearly and unmistakably waive Bernard's right to pursue his state law claims in state court. He therefore had that right and did not need to exhaust his contractual remedies before bringing suit. It was error to dismiss Bernard's claims as either preempted by federal law or barred by the exhaustion doctrine.[45]

---

[44] *Id.*

[45] Alaska Airlines also asks us to affirm the dismissal of Bernard's claims on alternate grounds. First, it contends that the 20-month time between Bernard's allegation of sexual harassment in 2009 and his termination in 2011 is too long as a matter of law to support a finding of retaliatory discharge. But Bernard's first amended complaint alleged a course of conduct commencing in 2009 and continuing through his termination.

(continued...)

**B.** **Bernard's Hybrid Claim For Breach Of The Duty Of Fair Representation Was Time-Barred.**

In his proposed second amended complaint Bernard included a hybrid claim for breach of the duty of fair representation, based on the union's alleged failure to notify him of its decision not to pursue arbitration until after the filing deadline. The superior court dismissed the hybrid claim as time-barred. It found that Bernard "had notice that the grievance process had terminated to his disadvantage" when he received the union's notice "that it would not appeal his case on November 14, 2011," and that his complaint in state court, filed August 16, 2013, "was well outside the six-month window for hybrid claims." We agree with the superior court's decision of this claim.

Employee claims for violation of the duty of fair representation are exceptions to the exclusive jurisdiction of the RLA.[46] Like other courts, we recognize

---

[45](...continued)
And the lack of factual findings in a case decided on motions to dismiss precludes us from deciding the case on fact-based grounds. Alaska Airlines also argues conclusorily that Bernard's policy-based claim is barred by the two-year tort statute of limitations, AS 09.10.070. Bernard was discharged on June 24, 2011, the decision of the secondary hearing is dated August 17, and Bernard filed his complaint two years later on August 16, 2013. His two-month pursuit of the grievance process equitably tolled the statute of limitations. *See Richardson v. Municipality of Anchorage*, 360 P.3d 79, 89 (Alaska 2015) (describing elements of equitable tolling where a plaintiff pursues one available course of legal redress, fails to obtain relief, and is allowed to pursue the other course); *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*, 790 F.2d 727, 738 (9th Cir. 1986) (holding that it would be inconsistent with the underlying policies of federal labor law to deny equitable tolling to parties who have engaged in good faith in a contractual grievance process).

[46]     *See Sisco v. Consol. Rail Corp.*, 732 F.2d 1188, 1190 (3d Cir. 1984) ("Three exceptions to the exhaustion requirement in actions against employers calling for the resolution of minor disputes have been recognized: (1) when the employer repudiates the private grievance machinery; (2) when resort to administrative remedies would be futile; (3) when the employer is joined in a [duty of fair representation] claim
(continued...)

that in rare instances "the statutorily-created arbitration scheme is simply insufficient to accomplish the very ends it was designed to further."[47] One such instance is "[w]here the employee's failure to personally resort to the Board [for arbitration of an employment dispute] arises *solely* out of reliance on the union's expertise and is a function of his or her own lack of the same."[48] In that event, "failure to afford the employee a judicial remedy is tantamount to a denial of the right to be a party to a legally enforceable collective bargaining agreement."[49] In wrongful discharge cases, in order to avoid the RLA's arbitration requirement, the employee must "demonstrate both that his discharge violated the collective bargaining agreement and that his union breached its duty of fair representation."[50] This makes the claim a hybrid, even when the employee chooses to

---

[46](...continued)
against the union."). Bernard raises only the futility exception in his appeal. *See Czosek v. O'Mara*, 397 U.S. 25, 27-28 (1970) ("[I]t is beyond cavil that a suit against the union for breach of its duty of fair representation is not within the jurisdiction of the National Railroad Adjustment Board or subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts.").

[47]     *Kaschak v. Consol. Rail Corp.*, 707 F.2d 902, 907 (6th Cir. 1983); *see also Childs v. Pa. Fed'n Bhd. of Maint. Way Emps.*, 831 F.2d 429, 437-41 (3d Cir. 1987) (recognizing the three *Sisco* exceptions but holding that the fourth exception in *Kaschak* excused the employee from exhausting administrative remedies).

[48]     *Kaschak*, 707 F.2d at 910 (emphasis in original).

[49]     *Id*.

[50]     *Schaub v. K & L Distribs., Inc.*, 115 P.3d 555, 564 (Alaska 2005); *see also Vaca v. Sipes*, 386 U.S. 171, 186 (1967); *United Parcel Serv., Inc., v. Mitchell*, 451 U.S. 56, 62 (1981).

sue only the employer or only the union.[51]  Bernard sought to bring such a claim when he asked for leave to file his second amended complaint.

But federal law subjects all such claims to the six-month limitations period found in § 160(b) of the National Labor Relations Act (NLRA),[52] governing complaints of unfair labor practices.  In *DelCostello v. International Brotherhood of Teamsters* the United States Supreme Court applied the six-month limitations period to hybrid claims brought under the NLRA.[53]  We followed *DelCostello* when we applied the six-month limitations period to hybrid claims brought under the Labor Management Relations Act (LMRA).[54]  Most federal circuit courts have applied the six-month limitation to hybrid suits brought under the RLA,[55] and we see no reason not to do the same.  Bernard's claim

---

[51]     *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983) ("The employee may, if he chooses, sue one defendant and not the other;  but the case he must prove is the same whether he sues one, the other, or both.  The suit is thus not a straightforward breach of contract suit . . . , but a hybrid []fair representation claim, amounting to a 'direct challenge to "the private settlement of disputes under [the collective-bargaining agreement]." ' " (third alteration in original) (quoting *Mitchell*, 451 U.S. at  66 (Stewart, J., concurring))).

[52]     29 U.S.C. § 160(b) (2012).

[53]     462 U.S. at 172.

[54]     *See Schaub*, 115 P.3d at 564 ("Because Schaub's claim is hybrid [under the LMRA], we conclude that it is subject to the six-month statute of limitations . . . .").

[55]     *See Brock v. Republic Airlines, Inc.*, 776 F.2d 523, 525-26 (5th Cir. 1985) ("Because the duty of fair representation under the Railway Labor Act is identical to the duty of fair representation under the National Labor Relations Act, and because the federal policies and interests articulated in *DelCostello* are present in hybrid actions under the Railway Labor Act, . . . the six-month statute of limitations in § 10(b) of the National Labor Relations Act also controls duty of fair representation claims and hybrid actions brought under the Railway Labor Act.");  *Dozier v. Trans World Airlines, Inc.*,
(continued...)

was brought 21 months after the union declined to appeal his grievance to arbitration, and it is barred by the six-month limitations period.

## V.     CONCLUSION

We AFFIRM the superior court's order dismissing Bernard's hybrid claim for breach of the duty of fair representation.  We REVERSE the order dismissing Bernard's other claims as either preempted or subject to the arbitration provisions of the collective bargaining agreement, and we REMAND for further proceedings consistent with this opinion.

---

[55](...continued)
760 F.2d 849, 851 (7th Cir. 1985) ("The same policies that led the Court to adopt a federal limitations statute for hybrid claims brought under the LMRA apply with equal force to actions brought under the RLA, which similarly governs labor-management disputes although only in common-carrier industries. Thus, the reasoning and analysis of *DelCostello* control in the instant case."); *Barnett v. United Air Lines, Inc.*, 738 F.2d 358, 363-64 (10th Cir. 1984) (applying the limitations period recognized in *DelCostello* to a hybrid action); *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 241 (2d Cir. 1984) (applying the limitations period recognized in *DelCostello* to a hybrid action); *Sisco v. Consol. Rail Corp.*, 732 F.2d 1188, 1191-94 (3rd Cir. 1984) (applying the NLRA statute of limitations period to an action against a union for breach of the duty of fair representation); *Hunt v. Mo. Pac. R.R.*, 729 F.2d 578, 581 (8th Cir. 1984) (applying the NLRA statute of limitations period to an action against a union for breach of the duty of fair representation).