HOTEL, MOTEL, RESTAURANT, CON-
STRUCTION CAMP EMPLOYEES AND
BARTENDERS UNION LOCAL 879, Pe-
titioner,

v.

Neil THOMAS, Executive Director of the
Alaska State Commission for Human
Rights, and Alaska State Commission for
Human Rights, Respondents.

No. 2703.

Supreme Court of Alaska.

July 2, 1976.

James M. Hackett and Rita T., Allee, Fairbanks, for petitioner.

Carolyn E. Jones, Asst. Atty. Gen., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for respondents.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

RABINOWITZ, Justice.

In February 1975, respondent Thomas, Executive Director of the Alaska State Commission for Human Rights, filed with the Commission a complaint against the Hotel, Motel, Restaurant, Construction Camp Employees and Bartenders Union Local 879 (hereinafter referred to as "the Union"). The complaint was in the nature of a class action, alleging that the Union had engaged in a pattern and practice of employment discrimination against women in allocation of union jobs. An administrative hearing was scheduled for October 1975, but one week prior to the hearing date the Union filed an action in superior court seeking a writ of prohibition. The Union alleged, among other things, that Executive Director Thomas and the Commission lacked the authority under the relevant statutes to issue an administrative complaint on behalf of a class of persons purportedly victimized by unlawful discrimination. After a hearing, the superior court entered an order granting a writ of prohibition. The superior court ruled that, while Thomas had the authority under AS 18.80.100 to file a complaint in the nature of a class action before the Commission, the matter could not proceed until the Commission had promulgated regulations governing the procedures by which a class action complaint would be administratively adjudicated.

The Union' thereafter petitioned this court for review of the superior court's determination that the executive director has the power to file an administrative complaint in the nature of a class action. Inasmuch as this petition raises a controlling question of law which has significant implications for this state's efforts to eradicate illegal discrimination and which warrants prompt resolution, we granted the petition for review.[1]

---

1. The Union raised in its petition the additional question whether the administrative adjudication of a complaint in the nature of a class action would be res judicata on the issue of the union's liability for the alleged discrimination. Upon a full review of the record and transcript, we find that the superior court made no decision, nor issued any order, with respect to that question. Rule 23, Alaska Rules of Appellate Procedure, provides that an aggrieved party may petition for review of " . . . any order

or decision of the superior court, not otherwise appealable . . . ." Since no such decision or order was made below with respect to the res judicata question, we decline to consider this matter at this time.

In its reply brief the Union argued that due process will be violated if the Commissioner is allowed to bring a suit seeking class-wide relief in the absence of procedural guidelines ensuring fairness and adequacy of representation. Inasmuch as we affirm the superior court's decision, which stayed proceed-

■ The authority of the executive director to file a complaint before the Commission is found in AS 18.80.100, which provides:

> A person who believes he is aggrieved by any discriminatory conduct prohibited by this chapter may sign and file with the commission a written, verified complaint stating the name and address of the person alleged to have engaged in discriminatory conduct, and the particulars of the discrimination. The executive director may file a complaint in like manner when an alleged discrimination comes to his attention.

A complaint drawn in the nature of a class action, seeking classwide relief, is neither expressly authorized nor explicitly forbidden by AS 18.80.100. The Union argues that this silence evidences an intent on the part of the legislature to limit the power of the director to initiate only complaints based on specific individual grievances. Other statutory provisions are stressed as further evidence of this intent. As an alternative to seeking an administrative remedy, AS 22.10.020(c) permits an individual who is aggrieved by illegal discrimination, prohibited by Title 18, Chapter 80, to file suit in superior court for relief. AS 22.-10.020(c) further provides that the action may be maintained individually or ". . . on behalf of a class consisting of all persons who are aggrieved or injured by the act, practice, or policy giving rise to the action." Although the Commission enjoys a limited right under AS 18.80.145(a) to intervene in a private class action brought pursuant to AS 22.10.020(c), the executive director does not have statutory authority to initiate a class action in the superior court.[2] From this the Union infers that Alaska's legislature intended to deny the executive director the right to bring a classwide complaint to the Commission for administrative resolution.

■ We do not find this argument persuasive. Considered in isolation, the relevant statutory grant of authority, AS 18.80.100, equally supports the inference that a class action complaint is available and the inference that it is not. Thus, AS 18.80.100 presents a classic instance of statutory ambiguity. In such cases we have said that the intention of the legislature must be determined by construing the provision in question with reference to the purpose of the entire legislative enactment.[3] The objective of Title 18, Chapter 80, is the elimination and prevention of discrimination, in many facets of our society, where such discrimination is based on race, religion, color, national origin, sex, age, marital status, pregnancy or parenthood. More particularly, AS 18.80.-200 provides:

> (a) It is determined and declared as a matter of legislative finding that discrimination against an inhabitant of the state because of race, religion, color, national origin, age, sex, marital status,

---

ings until regulations implementing a class action before the Commission have been promulgated and the Union has had the opportunity to familiarize itself with those regulations, it is unnecessary to consider the due process argument. We also refuse to decide the claim of respondents that the superior court lacked jurisdiction to issue a writ of prohibition, since they never petitioned for review of that portion of the superior court's order, nor did they mention this claim in their original papers.

2. AS 18.80.145(a) provides:

When an action is brought under AS 22.-10.020(c), the plaintiff shall serve a copy of the complaint on the State Commission for Human Rights. Upon timely application, the commission may intervene as a party to the action as a matter of right. If the commission certifies in writing to the court that it is presently investigating or actively dealing with the act, practice or policy of the defendant giving rise to the cause of action, the court shall, at the request of the commission, defer proceedings for a period of not more than 45 days or such extended period as the court may allow; except that the court may enter an order or injunction if necessary to prevent irreparable injury to the plaintiff.

3. *State v. City of Anchorage,* 513 P.2d 1104, 1110 (Alaska 1973); *State v. American Can Co.,* 362 P.2d 291, 296 (Alaska 1961).

changes in marital status, pregnancy or parenthood is a matter of public concern and that such discrimination not only threatens the rights and privileges of the inhabitants of the state but also menaces the institutions of the state and threatens peace, order, health, safety and general welfare of the state and its inhabitants.

(b) Therefore, it is the policy of the state and the purpose of this chapter to eliminate and prevent discrimination in employment, in credit and financing practices, in places of public accommodation, in the sale, lease, or rental of real property because of race, religion, color, national origin, sex, age, marital status, changes in marital status, pregnancy or parenthood. . . .

In order to effectuate this purpose, the legislature established by Title 18, Chapter 80, a State Commission for Human Rights[4] and authorized the appointment of an executive director.[5] The Commission and its director are charged with broad responsibilities to study and report on the problems of discrimination,[6] to receive and investigate complaints of illegal discrimination from individuals,[7] to eliminate alleged discriminatory practices by informal methods of conference and conciliation when possible[8] and, when not, to hold an administrative hearing,[9] and ultimately to issue a remedial order when allegations of discrimination are proven.[10] In addition, the legislature has seen fit to give the executive director authority to activate the administrative machinery on his own initiative, by filing a formal complaint, when evidence of unlawful discrimination comes to his attention. Clearly the legislature intended the Commission to be more than a simple complaint-taking bureau; the statutory scheme constitutes a mandate to the agency to seek out and eradicate discrimination in employment, in credit and financing practices, in places of public accommodations, and in the sale, lease, or rental of real property.

The Union further relies upon certain episodes in the legislative history of Title 18, Chapter 80, particularly statutory amendments enacted in 1965 at the request of the governor to bring Alaska's law "into conformity" with federal civil rights legistation. The Union argues by analogy that because the federal administrative agency, the Equal Employment Opportunity Commission, lacks the authority to issue administrative complaints in the nature of a class action, the legislature of this state must have intended to deny Alaska's Commission that enforcement power.

We find this analogy unpersuasive. A cursory comparison reveals that the antidiscrimination legislation enacted in Alaska is not substantially similar to comparable federal laws.[11] In a series of political compromises, Congress limited the adjudicatory and coercive enforcement of the EEOC powers in favor of reliance on private citizen action as the primary mechanism for ensuring compliance with federal laws.[12] At the administrative level the EEOC is relegated to "conference, conciliation and persuasion" in order to resolve complaints of employment discrimination.[13]

---

4. AS 18.80.010.

5. AS 18.80.060(a)(1).

6. AS 18.80.060(a)(5), AS 18.80.150.

7. AS 18.80.100, AS 18.80.110.

8. AS 18.80.110.

9. AS 18.80.120.

10. AS 18.80.130.

11. Thus, in *Loomis Electronic Protection, Inc. v. Schaefer*, 549 P.2d 1341 (Alaska, 1976), we recently held that although there is no right to a jury trial in a civil action brought to enforce Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, there is such a right in an action brought to enforce AS 18.-80.010. et seq.

12. *Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964*, 84 Harv.L.Rev. 1109, 1197 (1971).

13. 42 U.S.C. § 2000e-5(b) (1964). By a 1972 amendment the EEOC is now empowered to file a civil action in district court in the event such informal methods of resolution are unavailing. 42 U.S.C. § 2000e-5(f)

By contrast, Alaska's State Commission for Human Rights is endowed with a full panoply of administrative powers, including the authority to investigate complaints, to hold hearings, to issue remedial orders and to obtain judicial enforcement of those orders in superior court. It is apparent that the more limited role of the federal Equal Employment Opportunity Commission is of dubious assistance in ascertaining the scope of the powers conferred by the legislature on the Alaska State Commission for Human Rights.

Considerably more helpful are the decisions of several state courts bearing on this question. Minnesota has enacted antidiscrimination legislation and charged an administrative agency with its enforcement. The act contains statutory language quite similar to AS 18.80.100.[14] In *Richardson v. I. S. D. No. 271*, 297 Minn. 91, 210 N.W.2d 911 (1973), the Supreme Court of that state held that the state's Human Rights Commissioner had the authority to file an administrative complaint in the nature of a class action. The Minnesota court found this interpretation compelled by that state's strong public policy against racial and sexual discrimination, and the broad statutory responsibility entrusted to the Commission to eradicate those evils. As did the superior court below, we find the reasoning of the majority opinion in that decision persuasive.

Maryland also has an antidiscrimination statute which, in language similar to AS 18.80.100, authorizes the agency to initiate its own administrative complaint.[15] In *Ferguson v. United Parcel Service*, 7 F.E. P. Cases 411 (Md.Cir.Ct.), *aff'd*, 270 Md. 202, 311 A.2d 220 (1973), *cert. denied sub nom. State of Maryland Commission on Human Relations et al. v. United Parcel Service*, 415 U.S. 1000, 94 S.Ct. 1602, 39 L.Ed.2d 895 (1974), the Maryland Circuit Court took the view that administrative class actions were intended as one of the remedies available to the commission.

Connecticut is another state that has created an administrative agency, the Connecticut Commission on Human Rights and Opportunities, to enforce its antidiscrimination laws. The commission is empowered to entertain grievances filed by private citizens and to bring administrative complaints on its own initiative.[16] The Connecticut Supreme Court has intimated in *Veeder-Root Co. v. Commission on Human Rights and Opportunities*, 165 Conn. 318, 334 A.2d 443 (1973), that among the Commission's powers is the authority to file a complaint alleging company-wide discrimination.

Finally, in *Commonwealth v. United States Steel Corporation*, 10 Pa.Cmwlth. 408, 311 A.2d 170 (1973), the court reviewed an administrative class action initiated by the Pennsylvania Human Relations

---

(1972). This civil action can, of course, seek classwide relief. *See, e. g., EEOC v. Detroit Edison Co.*, 515 F.2d 301, 310–12 (6 Cir., 1975).

14. Section 363.06(2) of the Minnesota State Act Against Discrimination, Minn.Stat. ch. 363 (1965), provides in full:

   Whenever the commissioner has reason to believe that a person is engaging in an unfair discriminatory practice, the commissioner may issue a complaint.

   The Union's atttempt to distinguish the language of this provision in a relevant manner is unavailing.

15. Section 12(b) of the Maryland Fair Employment Practice Act provides in part:

   Whenever the Commission has received reliable information from an individual or in-

dividuals that any person has been engaged or is engaged in any discriminatory practice . . . the Commission, on its own motion . . . may issue a complaint in its name in the same manner as if the complaint had been filed by an individual.

BNA, Fair Employment Practice Manual 451:526.

16. In relevant portion the Connecticut act, Conn.Gen.Stats. § 31–127 (Supp.1969), provides:

   The commission, whenever it has reason to believe that any person has been engaged or is engaged in an unfair employment practice, may issue a complaint.

BNA, Fair Employment Practice Manual 451:204.

Commission pursuant to language comparable to AS 18.80.100.[17] Although the complaint was found wanting in specificity, the court did not question the underlying authority of the agency to initiate a proceeding in the nature of a class action.[18]

In light of the foregoing decisions and considering the particular statutory scheme enacted by Alaska's legislature to remedy this most intractable of social ills, we interpret AS 18.80.100 to authorize the executive director to file a complaint in the nature of a class action seeking relief for an entire class of persons. In the course of pursuing investigatory and conciliatory duties, the director or his staff may well encounter evidence of systematic discriminatory practices involving a large group of persons similarly situated. It would be unreasonable to interpret this legislation as requiring the executive director to proceed on an individual case-by-case basis in challenging widespread illegality. Aggressive, large scale enforcement will be of critical importance if systematic and continued discrimination of this sort is to be eradicated.[19] In light of the remedial goals of this legislation, we are of the view that AS 18.80.100 must be broadly interpreted to authorize the executive director to file a complaint seeking classwide relief before the Commission.

The Union has argued against a broad reading of AS 18.80.100 on the grounds that such an interpretation would promote "governmentally sponsored litigation instead of conciliation." We do not think that such a result necessarily follows. The various prerequisities to litigation set forth in the statute remain unaffected by this decision. Thus, for example, a complaint in the nature of a class action filed by the director must still meet the specificity requirements of AS 18.80.100.[20] In accordance with the mandatory language of AS 18.80.110, such a complaint will be investigated, and if substantial evidence of discrimination is found, the Commission must undertake the conciliation process on a classwide basis. Only if conference, conciliation, and persuasion fail may the matter go forward to an administrative adjudication. Thus, the legislature's emphasis on informal methods of complaint resolution remains unimpaired by our interpretation of AS 18.80.100.

Affirmed.

---

17. Section 959 of the Pennsylvania Human Relations Act states in part:
   The Commission upon its own initiative or the Attorney General may, in like manner, make, sign and file such complaint.
   BNA Fair Employment Practice Manual 451:1107.

18. *See also Atchison, T. & S. F. Ry. Co. v. Kansas Commission on Civil Rights*, 215 Kan. 911, 529 P.2d 666, 672–75 (Kan.1974) (holding that a statutory grant of investigatory powers authorized investigation of alleged class-wide discrimination as well as discrimination against individuals).

19. *See* Note, 74 Harv.L.Rev. 526, 589 (1961).

20. Specificity is particularly important when a complaint alleges prolonged discrimination against a class of persons. Without fair notice of the nature and scope of the charges filed, a party charged will neither have the opportunity to meaningfully prepare for the conciliation process, nor the ability to file a responsive answer, pursuant to AS 18.80.-120, should conciliation fail. *See Veeder-Root Co. v. Commission on Human Rights and Opportunities*, 165 Conn. 318, 334 A.2d 443, 448 (1973); *cf. School Dist. No. 1, Multnomah County v. Nelson*, 534 P.2d 1135, 1139 (Or.1975).