*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA STATE COMMISSION FOR HUMAN RIGHTS, MARTI BUSCAGLIA, Executive Director, | ) ) ) ) | Supreme Court No. S-16197 |
| | ) | Superior Court No. 3AN-15-10346 CI |
| Appellant, | ) ) | O P I N I O N |
| v. | ) ) | No. 7280 – August 31, 2018 |
| DORI LYNN ANDERSON, | ) ) | |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Stephen Koteff, Alaska State Commission for Human Rights, Anchorage, for Appellant. Michael S. Schechter, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.
CARNEY, Justice, dissenting.

## I.    INTRODUCTION

May the Alaska State Commission for Human Rights limit the attendance of third parties at investigative interviews? This question arises in the context of a Commission investigation into a State employee's complaints of workplace

discrimination. The Commission issued a subpoena to interview the complainant's supervisor, who refused to be interviewed unless an employer representative was also present. On the Commission's petition, the superior court issued an order to show cause why the supervisor should not be held in contempt. The supervisor moved to vacate the order and dismiss the contempt proceeding; the superior court granted the motion on the ground that the Commission lacked the legal authority to exclude third parties from its investigative interviews. The Commission appeals.

We conclude that the statutory requirement of a confidential investigation, with its specific limits on a respondent's access to investigative materials, clearly authorizes the Commission to exclude third parties from investigative interviews. We therefore reverse the superior court's order dismissing the Commission's petition and remand for further proceedings.

## II.	FACTS AND PROCEEDINGS

### A.	Background

#### 1.	The Alaska Commission for Human Rights

The Commission for Human Rights is responsible for enforcing Alaska's anti-discrimination laws.[1] It will accept a complaint from any "person who is aggrieved by a discriminatory practice" prohibited by Title 18, Chapter 80, and its executive director may file a complaint "when a discriminatory practice comes to [her] attention."[2] The Commission staff acts on a complaint by first conducting an informal investigation,

---

[1]	*See* AS 18.80.060; *Hotel, Motel, Rest., Constr. Camp Emps. & Bartenders Union Local 879 v. Thomas*, 551 P.2d 942, 945 (Alaska 1976).

[2]	AS 18.80.100.

"promptly and impartially."[3] If the investigation shows "that there is substantial evidence of an unlawful discriminatory practice," the Commission attempts to "eliminate or remedy the discriminatory practice through an agreement reached by conference, conciliation, and persuasion."[4] If no agreement is reached, the executive director may dismiss the complaint or file an accusation and refer the matter for a hearing before the Commission.[5]

These investigations are generally confidential by statute. With limited exceptions, the Commission is prohibited from "mak[ing] public the name of a person initiating a complaint or a person alleged to have committed [a discriminatory act or practice] during an investigation."[6] "The records of investigation and information obtained by the [C]ommission during an investigation . . . are confidential."[7] "However, the records and information compiled by the [C]ommission during an investigation shall be available to the complainant or respondent . . . at least 10 days before a hearing is held under AS 18.80.120 or upon receipt by the complainant or respondent" of notice that attempts at conciliation have failed, "whichever occurs earlier."[8]

The Commission's staff is authorized by regulation to use a variety of investigative methods. These include witness interviews, "inspection of documents and

---

[3] AS 18.80.110.

[4] *Id.*

[5] AS 18.80.112, .120(a).

[6] AS 18.80.115.

[7] *Id.*

[8] *Id.*

premises," and "examination of written submissions of parties and witnesses."[9] The executive director may "issue subpoenas, subpoenas duces tecum, and other process to compel the attendance of witnesses and the production of testimony, records, papers, accounts, and documents."[10] Petitions to enforce a subpoena may be filed in superior court by the Commission, any individual commissioner, or a Commission employee authorized by the Commission.[11]

The focus of this appeal is the Commission's unwritten policy, followed for at least 27 years,[12] barring third parties from investigative interviews with "certain limited exceptions." As the Commission describes its policy, third parties may be present if the interviewee is "the respondent named in the complaint, or is a member of the respondent's 'control group' management, or has managerial responsibility.' " The Commission also allows witnesses to be accompanied by their own attorneys and, if necessary, an interpreter or a guardian.

### 2. The investigation

The investigation at issue began when an employee filed two complaints against her employer, the State of Alaska Department of Health and Social Services (DHSS), in August 2014 and February 2015. The Commission opened an investigation headed by investigator Patricia Watts. DHSS responded to the complaints with a letter

---

[9]     6 Alaska Administrative Code (AAC) 30.320(a) (2014).

[10]     AS 18.80.060(c).

[11]     *Id*.

[12]     The Commission offered affidavits of its former executive director, Paula Haley, and the investigations director, Nanette Gay, to prove the policy's existence and explain its parameters. The superior court found that the Commission had a longstanding policy to conduct interviews in this way, and Anderson does not challenge that finding on appeal.

from Greta Jones,[13] an Equal Employment Opportunity (EEO) program manager for the State. Jones's letter identified Dori Lynn Anderson as the complainant's supervisor.

When Watts called Anderson to schedule an interview, Anderson responded by email directing Watts to Jones, the EEO manager. Watts replied that she was "within correct procedure to schedule an interview directly with" Anderson and suggested some dates. According to a memorandum drafted by Watts, Jones called a few days later to inform her that Anderson (and another witness whose involvement is not at issue here) had "managerial status that entitled [Jones] to attend the interviews." Watts disputed this: she told Jones that Anderson was "a supervisor but not a high-level manager." Jones also said that DHSS would require a subpoena for the witness interviews, and Watts replied that she would be requesting subpoenas.

Paula Haley, then-executive director of the Commission, issued an administrative subpoena directing Anderson "to appear at the offices of [the Commission] . . . to provide testimony" on September 18. On September 14 Jones called Watts "in response to the subpoena" to say that Anderson wanted her to be present at the interview. Watts responded "that the Commission ha[d] to address" whether Jones could attend but agreed to discuss rescheduling. In a letter a few days later Watts confirmed a new date for Anderson's interview, October 6, and informed Jones, "The Commission will not allow anyone else to be present during my interview of Ms. Anderson except for her attorney, if she retains counsel."

Jones and the Attorney General's Office both wrote the Commission, challenging its authority to exclude Jones from Anderson's interview. In a letter to Jones, the Commission's attorney, Stephen Koteff, wrote that the Commission did indeed

---

[13]    Following the parties' practice, we use a pseudonym only for "Greta Jones," a representative of the respondent (*see* AS 18.80.115).

have the authority to "set reasonable conditions on its interviews of witnesses" and that witnesses "are not entitled to representation . . . absent some affirmative right conferred by law." Watts faxed a letter to Anderson the same day, informing her that Jones could not be present at the interview and that the Commission might "seek enforcement of the subpoena in court" if Anderson "refuse[d] to answer or participate in the interview under these circumstances."

### 3.    The interview

On October 6 Jones and Anderson called Watts to initiate the telephone interview. Jones recorded the call.[14] Watts told Anderson that "[t]he Commission's statutes require that the Commission's investigations be conducted confidentially. That means third parties may not be present during witness interviews, third parties such as Ms. [Jones]." Watts then asked whether Anderson was ready to "proceed with the interview" without Jones's presence. Anderson replied that she would like Jones present. Watts asked again. Jones interjected that Anderson "is very willing to answer any questions and I'm just here to support her," and Anderson said she felt the same way. Watts asked a third time whether Anderson was willing to be interviewed alone, and Anderson replied, "No." Watts informed Anderson that she risked being found in contempt, and Anderson said she understood. When asked once more if she would be willing to be interviewed without Jones present, Anderson said she "would like support." Watts reiterated that Anderson faced a contempt proceeding and offered her a last chance to answer questions without Jones present. Anderson said, "I don't know how to answer that because I am willing to answer the questions." But she confirmed once more that she would answer questions only with Jones present, and Watts ended the interview.

---

[14]    Jones told Anderson she decided to record the call "only so that if we had to [we could] show that you really did show up and you're prepared to of course answer any questions."

After the call ended — as Watts described it in a contemporaneous email — Anderson informed Watts that she would be willing to be interviewed alone after all but soon changed her mind, admitting that she had "gone back and forth on having [Jones] there with me when we talk" but that ultimately "I find I do want her there with me." Watts reiterated the Commission's position and asked Anderson to call her if she changed her mind again.

## B. Proceedings

The Commission filed a petition for a show cause hearing in the superior court. Based on the petition and the accompanying affidavit of investigations director Gay, the superior court issued an order to show cause. Anderson, represented by the Attorney General's Office, filed a motion to vacate the order to show cause and dismiss the contempt proceedings.[15] The court held a hearing on June 14, 2016, and, following oral argument, granted Anderson's motion. The superior court issued what it described as a "very narrow" ruling that the Commission did "not [meet] its burden of proof that it ha[d] the authority to require Ms. Anderson to appear for an interview alone in this particular case." In support of its ruling the court noted the lack of a written regulation, inconsistencies in how the Commission explained its policy to Anderson,[16] and the absence of any limiting language in the subpoena itself.

The Commission filed this appeal.

---

[15] Some intervening but ultimately irrelevant procedural steps are omitted from this description.

[16] The court noted the difference between Watts's September 18 letter, which stated that witnesses could be accompanied by their attorneys, and Koteff's October 1 letter, which stated that witnesses "are not entitled to representation, whether by counsel or otherwise, absent some affirmative right conferred by law."

## III. STANDARD OF REVIEW

"[A] superior court's decision not to hold a party in contempt is committed to the court's discretion and is one to which we will accord considerable deference."[17] However, we review questions of law de novo and apply our independent judgment to "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[18] When we review an agency's statutory interpretation in an area beyond its expertise, we use the substitution of judgment standard, applying our independent judgment while "giv[ing] due deliberative weight 'to what the agency has done, especially where the agency interpretation is longstanding.' "[19]

"Whether an agency action is a 'regulation' requiring rulemaking under the Alaska Administrative Procedure Act is a question of law that does not involve agency expertise," and we review such determinations using our independent judgment.[20]

## IV. DISCUSSION

The Commission's position is that it has the authority to exclude third parties from its investigative interviews and that it has exercised this authority for decades pursuant to an unwritten policy. Anderson counters that an unwritten policy is insufficient and that the Commission's policy has no support in statute or regulation. She also argues that the superior court did not abuse its discretion by vacating the contempt

---

[17]     *Stuart v. Whaler's Cove, Inc.*, 144 P.3d 467, 469 (Alaska 2006).

[18]     *Bernard v. Alaska Airlines, Inc.*, 367 P.3d 1156, 1159-60 (Alaska 2016) (quoting *Healy Lake Vill. v. Mt. McKinley Bank*, 322 P.3d 866, 871 (Alaska 2014)).

[19]     *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 73 (Alaska 2013) (quoting *Chugach Elec. Ass'n v. Regulatory Comm'n of Alaska*, 49 P.3d 246, 250 (Alaska 2002)).

[20]     *Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation*, 145 P.3d 561, 564 (Alaska 2006) (citing *Alaska Ctr. for the Env't v. State, Office of the Governor*, 80 P.3d 231, 243 (Alaska 2003)).

order when the face of the subpoena contained no restrictions on third-party attendance and the Commission's explanations of its policy were inconsistent. We conclude, however, that the confidentiality of the Commission's investigations, mandated by statute, necessarily entails the authority to conduct confidential interviews. We also hold that the subpoena was valid and that it was an abuse of discretion to vacate the order to show cause and dismiss the contempt proceeding.

### A. The Confidentiality Of Commission Investigations Necessarily Implies The Authority To Exclude Third Parties From Witness Interviews.

Administrative agencies are created by statute "and therefore must find within the statute the authority for the exercise of any power they claim."[21] The mandate of AS 18.80.115 — that investigations be confidential — contains by strong implication the authority the Commission needs to limit third-party attendance at investigative interviews. The statute, entitled "Confidential information," provides that "[t]he records of investigation and information obtained by the [C]ommission during an investigation . . . are confidential and may not be made available by the [C]ommission for inspection by the public."[22] The statute further states that information collected by the Commission "during an investigation shall be available to the complainant or respondent" under two circumstances: (1) ten days before a hearing or after notice that conciliation has failed; or (2) "in accordance with the rules of discovery if an action relating to the charge is commenced in court."[23] An implementing regulation states that

---

[21] *McDaniel v. Cory*, 631 P.2d 82, 88 (Alaska 1981).

[22] AS 18.80.115.

[23] *Id.*

"[r]ecords of investigation and information obtained during an investigation or inquiry are confidential and may not be disclosed except in accordance with AS 18.80.115."[24]

Alaska Statute 18.80.115 was added to Title 18 nearly 20 years after the Commission was created.[25] The bill proposing the amendment initially contained no provision at all that would give the complainant and the respondent access to the Commission's investigative records. A House committee suggested adding the current language, providing access under limited circumstances,[26] and that amendment was adopted.[27] The Commission argues that this amendment would have served little purpose if the respondent was meant to have contemporaneous access to the investigation by monitoring witness interviews as they occurred. Whatever the purpose of the amendment, we agree that the current statutory language supports only an intent that the process be confidential *as to the respondent* as well as to the public at large; the respondent was given access to investigative materials, but only under the circumstances specified in the law.

This construction advances the broad purpose of Title 18, Chapter 80: "the elimination and prevention of discrimination[] in many facets of our society."[28] "The Commission and its director are charged with broad responsibilities . . . to receive and

---

[24]     6 AAC 30.905.

[25]     Ch. 125, § 1, SLA 1980.

[26]     AS 18.80.115.

[27]     House Committee Substitute for Senate Bill 569, 11th Leg., 2d Sess. (1980).

[28]     *Hotel, Motel, Rest., Constr. Camp Emps. & Bartenders Union Local 879 v. Thomas*, 551 P.2d 942, 944 (Alaska 1976).

investigate complaints of illegal discrimination."[29]  To that end, the Commission has a "full panoply of administrative powers, including the authority to investigate complaints."[30]  In recognizing the importance of the Commission's duty to impartially investigate discrimination complaints, we have noted repeatedly that "the legislature intended to put as many 'teeth' into [AS 18.80] as possible."[31]

It is reasonable to assume that an investigation that depends on the candor and ease of witnesses in informal interviews would suffer if the Commission could not exclude third parties from those interviews — particularly employer representatives in cases of workplace discrimination.  A contrary interpretation could seriously damage the mandate of confidentiality:  While AS 18.80.115 prohibits the Commission from disclosing investigative material, it imposes no such prohibitions on private parties who have ongoing access to the same material.  A witness's candor could be chilled not only because her supervisor is sitting in the chair next to her and listening to every word, but also because the supervisor is free to tell anyone else what the witness tells the interviewer.

Maryland's highest court discussed this issue when it reversed the denial of an injunction excluding the employer from investigative interviews, observing that the employer's presence and demand to have the interviews recorded would "likely have the

---

[29]     *Id.* at 945.

[30]     *Id*. at 946; *see also Dow Chem. Co. v. United States*, 476 U.S. 227, 233 (1986) ("When Congress invests an agency with enforcement and investigatory authority, it is not necessary to identify explicitly each and every technique that may be used in the course of executing the statutory mission."); *In re Nowell*, 237 S.E.2d 246, 252 (N.C. 1977) ( "Any administrative agency empowered to investigate complaints and allegations of wrongdoing must have a broad discretion if it is to function at all.").

[31]     *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 624 (Alaska 2012) (quoting *McLean v. State*, 583 P.2d 867, 869 (Alaska 1978)).

effect of intimidating or influencing witnesses and frustrating the truth-seeking and confidential nature of the investigative process."[32] The court elaborated that "without an unimpeded fact-finding process, the Commission would be precluded from gathering the type of evidence that would normally be necessary to file a . . . complaint, and hence, the enforcement authority of the Commission would be inherently limited."[33] We agree. Without implying anything negative about the participants' motives in this case, we must recognize that, as a general rule, it is reasonable for the Commission to assume that the presence of third parties at witness interviews would hamper its ability to elicit full and candid statements.

Emphasizing the principle of statutory construction *expressio unius est exclusio alterius*,[34] Anderson argues that the Commission's investigative powers are limited to what is specifically described in the statute. She contends that other State agencies with subpoena power have been granted specific authority to exclude persons from hearings and other proceedings.[35] But Anderson applies the interpretive canon too

---

[32] *Md. Comm'n on Human Relations v. Talbot Cty. Det. Ctr.*, 803 A.2d 527, 543 (Md. 2002); *see also Nassau Health Care Corp. v. N.Y. State Ethics Comm'n*, 764 N.Y.S.2d 795, 800 (N.Y. Sup. Ct. 2003) ("[T]he court is compelled to conclude that the Commission's determination to exclude corporate counsel from interviews of employees, due to the alleged 'chilling effect' that the presence of corporate counsel would have on the Commission's investigation, must be upheld as rational.").

[33] *Talbot*, 803 A.2d at 543.

[34] "The maxim establishes the inference that, where certain things are designated in a statute, 'all omissions should be understood as exclusions.' The maxim is one of longstanding application, and it is essentially an application of common sense and logic." *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066 (Alaska 1991) (quoting *Puller v. Municipality of Anchorage*, 574 P.2d 1285, 1287 (Alaska 1978)).

[35] *See* AS 16.43.110(d) (granting subpoena power to Alaska Commercial
(continued...)

broadly. When the canon is used to contrast two sets of legislative language, it is usually in the context of two sections of the same statute or closely related statutes, not two completely separate statutory schemes.[36] The canon also becomes "less persuasive when applied to two acts passed far apart in time."[37] The Commission's duties and procedures, as described in Title 18, Chapter 80, are simply not closely enough related to the statutes governing other executive agencies that we would expect the legislature to have intended them to track each other for interpretive purposes.[38] Besides, "the maxim should be

_____

[35]     (...continued)
Fisheries Entry Commission); AS 25.27.085 (granting subpoena power to Child Support Services Agency); AS 42.40.810 (granting subpoena power to Railroad Labor Relations Agency).

[36]     *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section *of the same Act*, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (emphasis added) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))); *Emory v. United States*, 19 Ct. Cl. 254, 269 (Ct. Cl. 1884) ("The different phraseology of different statutes does not give occasion for the application of the maxim *expressio unius exclusio alterius*. . . ."); *Nakahara v. NS 1991 Am. Tr.*, 739 A.2d 770, 781 (Del. Ch. 1998) (refusing to apply canon where it "would require drawing this inference from the language of *two different statutes*, rather than from *different provisions of the same statute*" (emphasis in original)).

[37]     *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 228 F. Supp. 3d 797, 806-07 (E.D. Mich. 2017); *see also Moreno Rios v. United States*, 256 F.2d 68, 71 (1st Cir. 1958) (observing that canon "as an aid . . . is pretty weak when applied to acts of Congress enacted at widely separated times").

[38]     *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) ([T]he canon . . . "does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence."); *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002) ("The canon depends on identifying a
(continued...)

cautiously applied."[39] And where "the legislative purpose can be ascertained with reasonable certainty" — as we believe to be the case here — "the maxims of statutory construction [such as *expressio unius est exclusio alterius*] are secondary to the rule that a statute should be construed in light of its purpose."[40]

Relatedly, Anderson points out that the legislature has expressly authorized other agencies to hold private interviews; it could have done so in Title 18, Chapter 80 but did not. But the agencies Anderson lists are distinguishable. Alaska Statute 42.06.450 provides the Regulatory Commission of Alaska with the authority to "exclude from attendance at the taking of investigative testimony all persons except the person compelled to attend." But the statute creating the Regulatory Commission does not require that its investigations be confidential; in fact, the Regulatory Commission must make records in its possession "open to public inspection at reasonable times."[41] An agency that must make its records public may need a specific exception to hold private investigative interviews; an agency charged with keeping its records confidential does not.

---

[38]     (...continued)
series of two or more terms or things that should be understood to go hand in hand [such that the omission of one] support[s] a sensible inference that the term left out must have been meant to be excluded.").

[39]     *Chevron U.S.A. Inc. v. LeResche*, 663 P.2d 923, 931 (Alaska 1983) (citing 2A C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 47.25 (4th ed. 1973)).

[40]     *Beck v. State, Dep't of Transp. & Pub. Facilities*, 837 P.2d 105, 117 (Alaska 1992).

[41]     AS 42.06.445(a).

Anderson also relies on the fact that both the Office of Victims' Rights and the Office of the Ombudsman may conduct confidential investigations[42] but have also been granted specific statutory authority to "hold private hearings."[43] But a witness interview during the course of an informal investigation is not a "hearing." At a hearing "there are parties, and issues of law and of fact to be tried, and at the conclusion of the hearing, action is taken which may materially affect the rights of the parties."[44] Investigations, on the other hand, "have no parties and are usually held in private."[45] "An 'investigation' is nonadversary and contemplates a procedure much less formal and more flexible than applies even to an administrative hearing."[46] Whether an agency has explicit authority to "hold private hearings" says nothing about the tools it is allowed to use in its investigations.

---

[42] AS 24.55.160(b) ("The ombudsman shall maintain confidentiality with respect to all matters and the identities of the complainants or witnesses coming before the ombudsman except insofar as disclosures may be necessary to enable the ombudsman to carry out duties and to support recommendations."); AS 24.65.120(c) ("The victims' advocate shall maintain confidentiality with respect to all matters and the identities of the complainants or witnesses coming before the victims' advocate except insofar as disclosures may be necessary to enable the victims' advocate to carry out duties and to support recommendations.").

[43] AS 24.55.160(a)(3) ("In an investigation, the ombudsman may . . . hold private hearings."); AS 24.65.120(b)(2) ("In an investigation, the victims' advocate may . . . hold private hearings.").

[44] *Bowles v. Baer*, 142 F.2d 787, 789 (7th Cir. 1944).

[45] *Id.*

[46] *Atchison, Topeka & Santa Fe Ry. Co. v. Kan. Comm'n on Civil Rights*, 529 P.2d 666, 673 (Kan. 1974); *see also Barngrover v. Med. Licensure Comm'n of Ala.*, 852 So. 2d 147, 152-53 (Ala. Civ. App. 2002) (quoting *Atchison*, 529 P.2d at 673).

Anderson also contends that the Commission's policy of limiting third party attendance at investigative interviews is unlawful unless it is embodied in a regulation. Rulemaking under the Administrative Procedure Act (APA) is required for an agency's "expansive or unforeseeable" interpretations of a statute but not for "obvious, commonsense interpretations," because requiring commonsense interpretations to go through the APA's formal notice and comment process "would result in complete ossification of the regulatory state."[47] "An agency action may not be a commonsense interpretation of existing law when it adds 'requirements of substance' rather than serving as an 'interpretation of the [statute] according to its own terms.' "[48]

We conclude that the Commission's longstanding policy of excluding third parties from informal witness interviews is a commonsense interpretation of the statutory requirement that it maintain the confidentiality of its investigative "records and information."[49] While the Commission may be well advised to formalize some of its investigative practices through the rulemaking process, it was not required to do so for the policy at issue here.[50]

---

[47] *Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation*, 145 P.3d 561, 573 (Alaska 2006).

[48] *Chevron U.S.A., Inc. v. State, Dep't of Revenue*, 387 P.3d 25, 37 (Alaska 2016) (alteration in original) (quoting *Alyeska Pipeline Serv. Co.*, 145 P.3d at 573)).

[49] AS 18.80.115.

[50] The dissent points out that no statute or regulation "mandates" that the interview be closed to third parties. But AS 18.80.115 requires confidentiality while mandating no particular means for assuring it. When analyzing a regulation, we ask whether it "is consistent with and reasonably necessary to carry out the purposes of the statutory provisions" and is "not arbitrary." *Warner v. State*, 819 P.2d 28, 31 (Alaska 1991). Our holding today — that the Commission's longstanding policy is commonsense and does not need to be promulgated as a regulation — necessarily means
(continued...)

## B. It Was An Abuse Of Discretion To Vacate The Show Cause Order And Dismiss The Contempt Proceedings.

Anderson argues that even setting aside the question whether the Commission had the authority to exclude third parties from her interview, the superior court did not abuse its discretion when it vacated the show cause order and dismissed the contempt proceeding because Anderson had complied with the plain terms of the subpoena, which said nothing about limitations on attendance. It is undisputed that Anderson appeared telephonically at the agreed time and was prepared to answer Watts's questions, though only on her own conditions: that Jones be allowed to be there too.

Alaska Statute 44.62.590 allows an agency to bring a motion for an order to show cause if it certifies to the superior court that an individual involved in an investigation "(1) disobeys or resists a lawful order; (2) refuses to respond to a subpoena; (3) refuses to take oath or affirmation as a witness; (4) refuses to be examined; or (5) is guilty of misconduct at a hearing or so near the hearing as to obstruct the proceeding." Here, the Commission asked that Anderson be held in contempt for "refusing to obey a subpoena." Once the superior court had jurisdiction,[51] it was required to apply the law of civil contempt.[52] A party may not be found in civil contempt unless the order at issue

---

[50]    (...continued)
that we find the policy consistent with and reasonably necessary to carry out the statute, as well as not arbitrary. Our inquiry ends there.

[51]    A superior court has jurisdiction over an administrative subpoena once it issues an order directing the person to appear and show cause. AS 44.62.590(c).

[52]    AS 44.62.590(d).

was "sufficiently clear" that the responding party should have known what was required in order to comply.[53]

The superior court appears to have found that Anderson complied with the subpoena because the subpoena required only that she appear for her interview — which she did — while placing no limits on third party attendance. But the subpoena, like most, did not require only that Anderson appear; it required her to "appear . . . *to provide testimony*." (Emphasis added.) A witness cannot satisfy a subpoena by simply showing up and then declining to testify except on conditions she knows are unacceptable to the subpoenaing authority.[54]

Furthermore, contrary to Anderson's argument, a valid subpoena need not include every detail inherent in the type of proceeding.[55] A subpoena to testify at a confidential hearing is not invalid because it fails to note that persons other than the

---

[53] *See Johnson v. Johnson*, 239 P.3d 393, 406 (Alaska 2010) (holding it was abuse of discretion not to hold contempt hearing because order at issue "was sufficiently clear that neither the issuing court nor the parties could have read it to permit [appellee] to avoid responding"); *Anchorage Police & Fire Ret. Sys. v. Gallion*, 65 P.3d 876, 882-83 (Alaska 2003) (rejecting argument by defendant in civil contempt that underlying order was unclear because language of order was clear, no one had argued ambiguity at trial court level, and evidence suggested purposeful noncompliance).

[54] *See* AS 44.62.590(a)(4) (identifying "refus[al] to be examined" as one basis for contempt proceeding); AS 09.50.010(10) (defining "contempts of the authority of the court" to include "disobedience of a subpoena duly served, or refusing to be sworn or answer as a witness"); *United States v. Wilson*, 421 U.S. 309, 314-15 (1975) ("Respondents' refusals to answer, although not delivered disrespectfully, plainly . . . constitute contemptuous conduct.").

[55] *Cf.* Alaska R. Civ. P. 45(a) ("Every subpoena shall be issued by the clerk . . . , shall state the name of the court and title of the action, and shall command each person to whom it is directed to attend and give testimony or to produce documents at a time and place therein specified.").

witness may be barred from entering the hearing room; a subpoena to testify at trial is not invalid because it fails to note that the witness might be questioned alone in camera. While Anderson's expressed desire for supportive company at the interview is understandable, it was not reasonable for her to expect that the Commission would accommodate her desire unless it said otherwise on the face of the subpoena. Implicit in subpoenaed testimony is the witness's loss of some control over the circumstances of time, place, and manner. And the record is clear in this case that Jones and Anderson were repeatedly made aware of the Commission's policy of excluding third parties from interviews, even before the subpoena was issued.[56]

Anderson also relies, however, on the superior court's finding that the Commission's communications about its policy were "clearly inconsistent,"[57] arguing that she cannot be faulted for failing to comply with an unclear directive. Watts's September 18 letter to Jones said that no third parties could attend Anderson's interview "except for her attorney, if she retains counsel." The alleged inconsistency appears in Koteff's October 1 letter, in which he informs Jones that "[w]itnesses in such investigations are not entitled to representation, whether by counsel or otherwise, absent some affirmative right conferred by law." But whether Anderson could have an attorney

---

[56] After the initial contact, most of the Commission's communications on the subject were made to Jones. Anderson had referred Watts to Jones initially. Jones purported to speak for Anderson thereafter, and Anderson does not appear to contend that she was not personally aware of the Commission's position as it was communicated to Jones.

[57] Anderson also finds an inconsistency stemming from a telephone call in which Watts said that the Commission had to review whether Jones could be present in the interview and additional instances where Anderson was told she was not entitled to a representative. This argument is unpersuasive; it was not inconsistent for Watts to take time to consider Jones's request to sit in on the meeting and then get back to her with a response that Jones could not be present.

present was immaterial to her compliance; she never indicated any desire to have one. The only issue between the parties was whether she could bring Jones, who according to Anderson herself was not her representative.

Because the Commission had the authority to exclude third parties from its investigative interviews; because it was not necessary that the subpoena explicitly assert this specific aspect of its authority in order to be valid; and because the alleged inconsistency in the Commission's explanation of the policy was immaterial to Anderson's failure to comply, we hold that it was an abuse of discretion to conclude that Anderson complied with the subpoena.

## V.    CONCLUSION

We REVERSE the order vacating the show cause order and dismissing the Commission's petition and REMAND for further proceedings consistent with this opinion.

CARNEY, Justice, dissenting.

Because I would affirm the superior court's order dismissing the contempt proceeding against Anderson, I respectfully dissent. Although I share the court's recognition of the important role that the Commission plays in enforcing Alaska's anti-discrimination laws, I cannot agree that a longstanding, unwritten, inconsistently applied policy authorizes the Commission to prevent interview subjects from being accompanied by another person at the interview. Nor can I agree that Anderson failed to comply with a subpoena that "commanded [her] to appear . . . to provide testimony" because she appeared with a "support" person.[1]

As the court explains, the statutes and regulations that govern the Commission's investigations require that it keep confidential the "records . . . and information" that it obtains in its investigations.[2] The court therefore concludes that there is a "strong implication" that interviews must be confidential and that the Commission has the authority to ban the attendance of third parties. But neither statute nor regulation mandates that each interview involve only the Commission's investigator and the interview subject.[3] Nor is there any written authority for the Commission's

---

[1]    I share the court's concern that the candor and ease of witnesses in interviews would suffer if employer representatives were allowed to attend in cases of workplace discrimination. But Anderson consistently asserted that she wanted Jones to be present because she wanted Jones's support.

[2]    AS 18.80.115; 6 Alaska Administrative Code (AAC) 30.905 (2014).

[3]    *See* AS 18.80.115 ("The records of investigation and information obtained by the commission during an investigation under AS 18.80.110 are confidential and may not be made available by the commission for inspection by the public."); 6 AAC 30.905 ("Records of investigation and information obtained during an investigation or inquiry are confidential and may not be disclosed except in accordance with AS 18.80.115. Records and information required to be kept confidential by law must be withheld from

(continued...)

allowing "certain limited exceptions" to this policy: in addition to attendance by the attorney for an interview subject, third parties can be present if the subject of the interview is also the respondent in the complaint under investigation, or if the interviewee is a member of the respondent's "control group" or has, in the opinion of the Commission, sufficient "managerial responsibility."[4] The Commission also did not provide any specific support for its ability to ban third parties before Anderson's interview, stating without further elaboration that it had "ample legal authority" to do so.

The requirement that the Commission maintain confidentiality does not in itself require that it ban third parties from interviews. Other State entities must also maintain confidentiality; the Office of Children's Services (OCS), for example, conducts confidential investigations and gathers and maintains confidential information.[5] OCS does not, however, conduct all of its interviews — or even the resulting court proceedings — without the presence of third parties.[6] Rather, parties who receive

---

[3] (...continued) disclosure.").

[4] The Commission will also allow an interpreter or a legal guardian to be present if appropriate.

[5] 7 AAC 54.020-.030; *see* AS 47.10.093; AS 47.10.070 (confidentiality of CINA information at hearings).

[6] *See* AS 47.10.070; ALASKA OFFICE OF CHILDREN'S SERVICES, CHILD PROTECTIVE SERVICES MANUAL § 2.2.5 (2016), http://dhss.alaska.gov/ocs/Documents/Publications/CPSManual/cps-manual.pdf (providing under certain circumstances OCS will coordinate with tribal representatives, law enforcement officers, and school officials to attend interviews).

confidential information from OCS are instructed (and in the case of court proceedings, ordered) to maintain the information's confidentiality.[7]

I also am not persuaded that Anderson failed to comply with the subpoena she received. She did appear as commanded and was willing to provide testimony, as long as her support person was allowed to be present.

Because no statute or regulation establishes that the Commission has the authority to ban third parties from its interviews, and because the subpoena did not inform Anderson that she was not permitted to bring a support person to her interview, I would affirm the superior court in this case.

---

[7] *See* AS 47.10.070 (f) ("[A] person attending a hearing open to the public may not disclose a name, picture, or other information that would readily lead to the identification of a child who is the subject of the child-in-need-of-aid case."); CINA Rule 22; 7 AAC 54.040(f) ("A person with sufficient legitimate interest who receives child protection information from the department shall safeguard the information.").