The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 15, 2025

**NO. S-1-SC-39468**

**FREDERICK GARCIA,**

Plaintiff-Petitioner,

v.

**NEW MEXICO HUMAN SERVICES DEPARTMENT,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Casey B. Fitch, District Judge**

Law Office of Paul M. Gayle-Smith
Paul M. Gayle-Smith
Las Cruces, NM

for Plaintiff-Petitioner

Mynatt, Springer P.C.
Blaine T. Mynatt
Alan J. Dahl
Las Cruces, NM

for Defendant-Respondent

**OPINION**

**VARGAS, Justice.**

{1}    In this appeal we consider whether Petitioner Frederick Garcia is permitted to file a lawsuit against his employer, New Mexico Human Services Department (HSD), alleging violations of the Whistleblower Protection Act (WPA or the Act), NMSA 1978, §§ 10-16C-1 to -6 (2010), after irrevocably electing to arbitrate the appeal of his demotion under the terms of a collective-bargaining agreement (CBA). The district court concluded that Garcia's "whistleblower claim is distinct" from the appeal of his demotion; therefore, he "should be permitted to pursue both his pending arbitration and the present litigation." The Court of Appeals reversed the district court, reasoning that the CBA's limitations on "the manner in which an employee can grieve violations of the agreement or appeal demotions" precludes Garcia from filing a WPA lawsuit that stems from the same conduct. *Garcia v. N.M. Hum. Servs. Dep't*, A-1-CA-39845, mem. op. ¶ 15 (N.M. Ct. App. June 13, 2022) (nonprecedential). We now reverse the Court of Appeals, concluding that the CBA does not waive Garcia's right to file a separate lawsuit under the WPA or require that the claim be submitted to the arbitration proceedings for the appeal of his demotion. As a result, Garcia may proceed with both his WPA lawsuit and the arbitration of the appeal of his demotion.

# I. BACKGROUND

## A. Garcia's Arbitration of the Appeal of His Demotion Pursuant to the CBA

{2}    Garcia is an employee of HSD and a member of the American Federation of State, County and Municipal Employees, Council 18 (the Union). The Union and HSD are parties to a CBA that governs certain terms of Garcia's employment. In 2016, Garcia testified as a witness in a lawsuit against HSD, stating that HSD employees had falsified documents. About three years later, Garcia was served with a "Notice of Contemplated Action" to terminate his employment and, later that year, Garcia was demoted and his pay was decreased. Garcia appealed his demotion and irrevocably elected to arbitrate the appeal in accordance with the provisions of the CBA, alleging on appeal that HSD "failed to meet the threshold of 'just cause'" to demote him.

## B. Garcia's WPA Complaint in District Court

{3}    After Garcia elected to arbitrate the appeal of his demotion, but before any proceedings had been held, Garcia filed a complaint in district court under the WPA. *See* §§ 10-16C-1 to -6. Garcia's complaint alleged that HSD violated his rights under the Act when it "retaliated against [him] by disciplining him and demoting [him]," after Garcia testified that HSD's employees had falsified documents. *See* § 10-16C-3(B) ("A public employer shall not take any retaliatory action against a public

employee because the public employee . . . testifies before[] a public body as part of an investigation, hearing or inquiry into an unlawful or improper act."). In district court Garcia sought an award of the full range of remedies available under the Act, including "lost wages, lost benefits, emotional distress, consequential damages and special damages" as well as "double damages for his wages [and] reinstatement with seniority." *See* § 10-16C-4(A) (identifying remedies available under the Act).

{4} HSD moved to dismiss Garcia's case and to compel arbitration. HSD argued that, pursuant to the CBA, Garcia's "irrevocable election of arbitration . . . obligated [him] to resolve his disputes with HSD through arbitration." According to HSD, "the subject matter is clearly covered by the arbitration provisions of the CBA which broadly provides that all 'allegations of violation, misapplication, or misinterpretation of this CBA' are subject to its grievance and arbitration procedure." (brackets omitted). After hearing argument, the district court denied HSD's motion to dismiss and compel arbitration. At the hearing, the district court reasoned that "under the [Act] there are additional remedies" that are not available under the CBA, and the district court "[did not] believe that [Garcia] gave those up when he elected to arbitrate." The district court's order concluded that Garcia's "whistleblower claim is distinct from the arbitration of his demotion" and, he "should be permitted to pursue both his pending arbitration and the present

litigation." The district court's order also certified the following question for interlocutory appeal: "whether [Garcia] should be permitted to proceed with the current litigation challenging his demotion when he previously irrevocably elected to challenge his demotion through arbitration and his arbitration is pending."

## C. Court of Appeals' Opinion

{5} The Court of Appeals accepted HSD's interlocutory appeal and reversed the district court's order. *Garcia*, A-1-CA-39845, mem. op. ¶ 1. The Court reasoned that the CBA's limitations on "the manner in which an employee can grieve violations of the agreement or appeal demotions . . . preclude Garcia from filing a WPA lawsuit on a claim that stems from the same conduct" that forms the basis for the appeal of his demotion. *Id.* ¶ 15. Applying this reasoning, the Court of Appeals held that Garcia "is not permitted to file a separate WPA lawsuit addressing conduct that is within the scope of the CBA" because the lawsuit "would circumvent a contract requiring arbitration." *Id.* Garcia appealed to this Court, and we granted certiorari under Rule 12-502 NMRA.

## D. Provisions of the CBA

{6} The CBA's Article 14, Grievance and Arbitration Procedure, includes the following provisions, in relevant part,

**Section 1. Scope**

A. Allegations of violation, misapplication, or misinterpretation of this [CBA] . . . shall be subject to this negotiated grievance procedure.

. . .

C. In accordance with the Personnel Act[’s] NMSA [1978, Section] 10-9-18 [(2009)], an employee who has completed the probationary period and has been dismissed, demoted, or suspended has the right to an appeal. The employee may have the appeal decided by the State Personnel Board [SPB] in accordance with SPB Regulations or may make an irrevocable election to have the appeal decided by an [a]rbitrator, but not both.

. . .

The CBA's Appendix includes the following:

**APPENDIX A**

**Filing a Disciplinary Appeal and Making an Irrevocable Election for Arbitration**

. . .

The [a]rbitrator's decision shall be final and binding on the parties[] subject to judicial review in accordance with [Section] 10-9-18(G)[,] (H).

. . .

In accordance with [Section] 10-9-18(F)[,] (H), if the [a]rbitrator finds that the action taken by the agency was without just cause, the [a]rbitrator may modify the disciplinary action or order the agency to reinstate the appealing employee to the employee's former position or to a position of like status and pay.

Separate from Appendix A and Article 14, the CBA also includes Article 39, Whistleblower Protection, which provides,

> Employees shall have the right, without interference or fear of penalty or reprisal, to disclose in good faith to internal auditors, [i]nspectors [g]eneral, or other appropriate governmental authorities information that may evidence improper governmental activity . . . or conditions that may threaten the health or safety of employees or the public.

## II. DISCUSSION

{7} We review denials of motions to compel arbitration de novo. *See Peavy ex rel. Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 9, 470 P.3d 218.

{8} New Mexico has adopted a strong public policy that favors resolution of disputes through arbitration in those instances when a party agrees to such a method. *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 16, 296 P.3d 478. "When a party agrees to a non-judicial forum for dispute resolution, the party should be held to that agreement." *Id.* (internal quotation marks and citation omitted). Indeed, arbitration agreements are contracts enforceable by the rules of contract law. *See id.*; *see also Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 10, 288 P.3d 888 (recognizing that "ordinary state-law principles that govern the formation of contracts" are used "to determine whether the parties clearly and unmistakably agreed to arbitrate an issue" (internal quotation marks and citation omitted)). Therefore, "[t]he terms of the [arbitration] agreement define the scope of the

jurisdiction, conditions, limitations and restrictions on the matters to be arbitrated." *Christmas v. Cimarron Realty Co.*, 1982-NMSC-079, ¶ 7, 98 N.M. 330, 648 P.2d 788.

{9} The primary dispute in this case is whether, under the provisions of the CBA, Garcia waived his right to file his complaint alleging violations of the WPA in district court in favor of arbitration when he irrevocably elected to arbitrate the appeal of his demotion. Garcia argues that the provisions of the CBA do not prevent him from bringing his WPA lawsuit independent of the arbitration proceedings.[1] HSD, by contrast, maintains that the terms of the CBA are "broad enough to encompass any disputes [Garcia] may have relating to whistleblowing." We agree with Garcia.

---

[1]At oral argument Garcia argued for the first time that NMSA 1978, Section 10-7E-17(C) (2020), of the Public Employees Bargaining Act (PEBA) prohibits the CBA from conflicting with state law and that such a conflict exists here. Because Garcia failed to raise this issue prior to oral argument or brief it before this Court, we will not address it. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them.").

**A.  Any CBA Requirement to Arbitrate or Otherwise Waive an Employee's Right to File a Lawsuit Involving an Employee's Individual Statutory Rights Must Be Clear and Unmistakable**

{10}  New Mexico's Uniform Arbitration Act provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." NMSA 1978, § 44-7A-7(a) (2001). When interpreting an arbitration clause, "courts will apply the plain meaning of the contract language as written." *Christmas*, 1982-NMSC-079, ¶ 8. "The terms of [an arbitration] agreement define the scope of the jurisdiction, conditions, limitations and restrictions on the matters to be arbitrated." *Id.* ¶ 7. And, we recognize that generally "arbitration agreements 'are drafted with broad strokes and, as a result, require broad interpretation.'" *Horne*, 2013-NMSC-004, ¶ 46 (citation omitted).

{11}  In this case, the Court of Appeals, applying this policy of broadly interpreting arbitration agreements, concluded that Garcia was required to arbitrate his claims under the WPA. *Garcia*, A-1-CA-39845, mem. op. ¶ 15. In reaching its conclusion, the Court of Appeals quoted *Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 21, 302 P.3d 751, stating "A CBA should be held to include a right to arbitrate a specific

8

grievance not expressly excluded by its terms, and doubt should be resolved in favor of arbitration." *Id.* ¶ 8 (internal quotation marks omitted).

{12}    Notwithstanding our well-settled policy that arbitration agreements require broad interpretation, two aspects of this case, taken together, require that we take a closer look at the arbitration agreement between the parties. First, HSD asks us to interpret the arbitration provision to include the requirement to arbitrate Garcia's valuable individual statutory claims under the WPA, which, by the terms of the arbitration provision, mandate that Garcia waive valuable remedies associated with those statutory claims. Second, we are compelled to consider the importance of the fact that the CBA constitutes the Union's waiver of the rights of represented employees rather than Garcia's waiver of his own rights.

{13}    In addition to *Luginbuhl*, our appellate courts have considered the scope of an arbitration provision in a CBA on only one other occasion. *See Jones Int'l Union of Operating Eng'rs*, 1963-NMSC-118, 72 N.M. 322, 383 P.2d 571. Neither of these cases involved a claim that an employee was required to arbitrate their individual statutory claims pursuant to the provisions of the CBA. *See Jones*, 163-NMSC-118 (considering whether employee may bring his wrongful discharge complaint in district court against employer); *Luginbuhl*, 2013-NMCA-053 (considering whether a police officer's petition for injunctive relief to prevent his alleged wrongful

9

discharge filed in district court was subject to the arbitration provision in the CBA between the city and the police union). We, therefore, look to our federal courts for guidance, as they have considered the tension between the policy to broadly interpret arbitration provisions and the importance of protecting an individual's statutory rights.

{14} In *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 72 (1998), the United States Supreme Court considered "whether a general arbitration clause in a [CBA] requires an employee to use the arbitration procedure for an alleged violation of the Americans with Disabilities Act of 1990 (ADA)." As is the case under New Mexico law, the *Wright* Court recognized that "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 78. (internal quotation marks and citations omitted). Notwithstanding this presumption, the *Wright* Court recognized that the issue in that case was not related to the interpretation of the CBA, but instead, required the Court to consider "the meaning of the federal statute," and "that is not a question which should be presumed to be included within the arbitration requirement." *Id.* at 78-79 (explaining that a statutory claim "is distinct from any right conferred by the collective-bargaining agreement" and even if the employee

10

"is not qualified for his position as the CBA requires, . . . he would *still* prevail if the refusal to hire violated the ADA"). Instead, the United States Supreme Court made clear that "[n]ot only is [an employee's] statutory claim not subject to a presumption of arbitrability," but "any CBA requirement to arbitrate it must be particularly clear." *Id.* at 79. The Court specified that an employee's statutory rights may be waived in a CBA, but "the waiver must be clear and unmistakable." *Id.* at 80 (citations omitted). Applying this "clear and unmistakable" standard to the case before it, the *Wright* Court concluded there was no waiver and that the language of the arbitration provision of the CBA "cover[ing] all matters affecting wages, hours, and other terms and conditions of employment" was insufficient to require the plaintiff to arbitrate his ADA claim. *Id.* at 77, 80-81. Therefore the plaintiff could bring the ADA claim in federal court. *Id.*

{15}     By contrast, in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), the United States Supreme Court concluded that the CBA "clearly and unmistakably" required the employees to arbitrate their age discrimination claim under the Age Discrimination in Employment Act (ADEA), barring their federal lawsuit, because

11

the CBA[2] at issue explicitly listed claims arising under the ADEA as being subject to the grievance and arbitration procedure. *Id.* at 260. In reaching its conclusion, the *14 Penn Plaza* Court distinguished the facts of that case from the facts of the earlier United States Supreme Court case of *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974). *14 Penn Plaza*, 556 U.S. at 263-65. In *Gardner-Denver*, the United States Supreme Court held that a unionized employee's right to sue his employer under Title VII of the Civil Rights Act of 1964 (Title VII) was not foreclosed by "prior submission of his claim to final arbitration under the nondiscrimination clause" of the governing CBA. 415 U.S. at 38, 47, 52. The CBA in that case prohibited "discrimination against any employee on account of race, color, religion, sex,

---

[2]The CBA considered by the *14 Penn Plaza* Court provided in relevant part:

30. NO DISCRIMINATION There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the *Age Discrimination in Employment Act*, the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules or regulations. *All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as the sole and exclusive remedy for violations*. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

*Id.* at 252 (omission in original) (emphasis added).

12

national origin, or ancestry," and it guaranteed that "[n]o employee will be discharged . . . except for just cause." *Id.* at 39 (alteration in original). The CBA's grievance procedure included a broad arbitration clause that covered "differences aris[ing] between the Company and the Union as to the meaning and application of the provisions of this Agreement" and "any trouble arising in the plant." *Id.* at 40 (alteration in original).

{16} Unlike the CBA in *14 Penn Plaza*, the CBA in *Gardner-Denver* did not explicitly mandate arbitration of statutory antidiscrimination claims. *Compare Gardner-Denver*, 415 U.S. at 49-50 (discussing the distinct rights employee had to bring separate arbitration and statutory antidiscrimination claims), *with 14 Penn Plaza*, 556 U.S. at 272 (discussing the mandatory arbitration provision for statutory antidiscrimination claims in the CBA). Absent such a specific mandate, the United States Supreme Court concluded that the employee in *Gardner-Denver* could properly submit his grievance to arbitration *and* file a lawsuit under Title VII. *Id.* at 47, 52, 59-60. The Court noted that an employee's *contractual right* under the CBA to submit his grievance to arbitration and his *statutory right* to file a lawsuit under Title VII are two distinct and separate rights. *Id.* at 49-50. "The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no

13

inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." *Id.* at 50. Thus, the *Gardner-Denver* Court reasoned that "[b]oth rights have legally independent origins and are equally available to the aggrieved employee." *Id.* at 52.

{17}     As the cases decided by the United States Supreme Court demonstrate, the "clear and unmistakable" standard applies equally to arbitration agreements for both contractual and statutory claims. That is, to be enforceable, such an agreement must include a specific agreement to arbitrate any legislatively created statutory right the parties wish to be a part of the arbitration.

{18}     We now turn to the arbitration provision at issue in this case to determine whether it clearly and unmistakably includes Garcia's right to sue under the WPA among the claims to be decided by the arbitrator.

**B.      The CBA Does Not Include a Clear and Unmistakable Requirement That Garcia Arbitrate His Claim Under the WPA**

{19}     Initially, we note that the plain language of the CBA sets out two separate and distinct arbitration provisions. Article 14, Section 1.A addresses "[a]llegations of violation, misapplication, or misinterpretation of this [CBA]" and requires that they "shall be subject to this negotiated grievance procedure," (grievance provision) which mandates arbitration. By contrast, Article 14, Section 1.C provides for an employee's right to irrevocably choose to arbitrate the employee's appeal of

14

employer discipline, including the employee's dismissal, demotion or suspension (disciplinary provision). Because this case arguably implicates both provisions, we consider whether the CBA clearly and unmistakably requires arbitration of Garcia's claims against HSD alleging statutory violations of the WPA under either provision.

**1.     The grievance provision does not clearly and unmistakably require Garcia to arbitrate his WPA claims**

{20}    We first evaluate the Article 14 grievance provision to determine whether it mandates arbitration. HSD contends that the Court of Appeals properly acknowledged that the scope of Garcia's arbitration of the appeal of his demotion under the CBA's Article 14 disciplinary provision can be expanded within the CBA to include his grievance of HSD's alleged violation of the Article 39 whistleblower protection provision. HSD's analysis is flawed for two reasons. First, we note that the CBA's grievance provision does not contain language that clearly and unmistakably requires an employee's statutory claims to be brought to arbitration. Instead, the language of the grievance provision is focused on contractual claims alleging a "violation, misapplication, or misinterpretation" *of the CBA*." Nothing in the grievance provision indicates the parties' intent to include other claims, statutory or otherwise, an employee may have against HSD, even if those claims arise out of the same facts that are the subject of the employee's contract claim. *See Wright*, 525 U.S. at 80 (concluding that a general contractual provision is insufficient to infer that

15

the parties intended to waive a statutorily protected right unless the waiver is "explicitly stated" (internal quotation marks and citation omitted)); *Gardner-Denver*, 415 U.S. at 50 (recognizing that an employee's statutory claims are not invalidated because they arose out of the same factual occurrence as employee's collective bargaining contract claim). Second, nothing in the grievance provision permits the parties to "expand" the scope of the arbitration to include other statutory or common law claims not specifically identified in the CBA. Instead, it places several limitations on an employee's right to grieve a violation, misapplication or misinterpretation of the CBA. This lack of explicit language requiring employees to arbitrate their statutory claims, coupled with the significant limitations the grievance provision places on an employee's autonomy to bring claims for arbitration leads us to conclude that arbitration is not mandated under the grievance provision of the CBA.

{21}     The grievance provision of the CBA is made up of four steps, the last of which is arbitration. A review of the steps makes clear that resolution of the grievance is directed by the Union, not the employee. Generally, "[g]rievances may be filed *on behalf of* an individual aggrieved employee." (emphasis added). And, while an individual employee "may present a grievance . . . and have it adjusted," the Union must be "provided with the opportunity to be present during the grievance meetings,

. . . provided copies of grievance documents, and . . . provided an opportunity to make its views known."

{22} Under the grievance provision of the CBA, "[a]n employee may not retain outside representation . . . without the advance approval of the Union" and "[a]n individual employee may not invoke arbitration under this Article," it must be invoked by the Union.

{23} Indeed, the limitations imposed on an employee bringing a claim under the grievance provision support a conclusion that the parties did not intend for the grievance provision to include the arbitration of individual claims based in statute. The provisions requiring Union approval for an employee to retain a lawyer and to present a grievance at all are intended to provide the Union the opportunity to protect the integrity of the contractual rights it negotiated under the CBA for all Union members without the interference of an individual employee. It did not contemplate the protection of the individual statutory rights of employees.

{24} We also recognize that by broadly interpreting the grievance provision to require that WPA claims be brought to an arbitrator—without an express or implicit mandate—has the potential to create a chilling effect in reporting improper government activity, especially in instances when the Union's interests in reporting such activity diverge from the employee's or when members of the Union are

17

implicated in the improper governmental activity that gives rise to the WPA claim. *See Bernard v. Alaska Airlines, Inc.*, 367 P.3d 1156, 1164-65 (Alaska 2016) (declining to waive an employee's right to pursue statutory claims in court without a clear and unmistakable waiver because, in part, the CBA barred the employee's "right to arbitrate if the union decline[d] to do so on the [employee]'s behalf"). Certainly under such an instance, a union would be unlikely to initiate a claim on behalf of an employee when it does not benefit the union to do so.

{25} Moreover, to interpret the language of the CBA to require that employees arbitrate their statutory claims, including those brought under the WPA, would deprive Garcia and other HSD employees of many significant statutory remedies permitted by the WPA. While the WPA provides for an award of "actual damages, reinstatement with the same seniority status . . . , two times the amount of back pay with interest on the back pay and" in addition requires that "an employer shall be required to pay the litigation costs and reasonable attorney fees of the employee," *see* § 10-16C-4(A), the CBA limits the award the arbitrator can make, explicitly disallowing the award of any "fine or other punitive damages or award of attorney's fees" and requiring the parties to equally share the cost of the arbitrator's fees and expenses.

{26} Like the *Wright* Court, this Court "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated." 525 U.S. at 80 (internal quotation marks and citation omitted). Here, the plain meaning of the CBA does not clearly and unmistakably waive Garcia's statutory right to bring his WPA claims in district court, and require him to bring these statutory claims to arbitration. Coupled with the restrictive procedures and limited rights set out in the CBA we must conclude that the grievance provision of CBA is not intended to mandate arbitration of employee statutory claims, including Garcia's WPA claims. *See, e.g.*, *Wright*, 525 U.S. at 80-82 (refusing to interpret a CBA arbitration clause as waiving an employee's statutory right to a judicial forum without an explicit waiver); *see also Mendoza v. Isleta Resort & Casino*, 2020-NMSC-006, ¶ 20, 460 P.3d 467 ("'Generally, the goal of contract interpretation is to ascertain the intentions of the contracting parties' . . . without manufacturing a new agreement." (citation omitted)). Consequently, we will not require Garcia to arbitrate his claim under the grievance provision.

{27} We now turn to the disciplinary provision and consider whether it contains a clear and unmistakable requirement to arbitrate Garcia's WPA claim.

**2. The disciplinary provision does not clearly and unmistakably require Garcia to arbitrate his statutory claims under the WPA**

{28} In addition to the grievance provision, the CBA contains a disciplinary provision, setting out the rights and responsibilities of the parties in the event an employee wishes to challenge, "[i]n accordance with [Section] 10-9-18," the employee's dismissal, demotion, or suspension. Unlike the requirements of the grievance provision, the disciplinary provision of the CBA allows the employee the autonomy to direct the proceedings without union involvement. The disciplinary provision gives the employee the right to appeal, as well as the right to choose whether the appeal will be decided by arbitration or by the State Personnel Board, requiring the employee to elect to either "have the appeal decided by the State Personnel Board in accordance with SPB Regulations or . . . make an irrevocable election to have the appeal decided by an Arbitrator, but not both." In the event an employee elects arbitration, the disciplinary provision incorporates many of the requirements of the Personnel Act's appeals provision, Section 10-9-18, to adjudicate an employee's appeal. *See* § 10-9-18(H). The CBA's disciplinary provision ensures an employee the right to a hearing and to present facts, just as the Personnel Act mandates. *See* § 10-9-18(A), (C), (H). The CBA's disciplinary provision also mimics the Personnel Act in defining the role of the arbitrator, providing "if the Arbitrator finds the action taken by the agency was without just

20

cause, the Arbitrator may modify the disciplinary action or order the agency to reinstate the appealing employee to the employee's former position or to a position of like status and pay." *See* § 10-9-18 (F). The CBA's disciplinary provision also integrates the Personnel Act's limitation on the possible award to "back pay as of the date of the dismissal, demotion or suspension or as of the later date as the Arbitrator may specify." *See* § 10-9-18 (F).

{29}	Notably, the disciplinary provision does not include any language waiving an employee's right to file a subsequent statutory lawsuit or requiring statutory claims be brought through arbitration. Instead, the disciplinary provision is limited only to an employee's right to appeal the "just cause" of the dismissal, demotion, or suspension, making no mention of the employee's statutory or other common law rights. And, like the grievance procedure, the arbitrator's remedial authority under the disciplinary provision is limited to reinstatement and an award of back pay and specifically precludes "mak[ing] an award that includes a fine or other punitive damages or award of attorneys' fees." Here, Garcia elected to have "[i]rrevocable [a]rbitration" decide only the "'just cause'" of his demotion. By making this election, absent a "clear[] and unmistakabl[e]" waiver, Garcia did not forfeit his separate statutory rights under the WPA. *See Gardner-Denver*, 415 U.S. at 49-50.

21

{**30**}    Unlike the arbitration provision in *14 Penn Plaza*, the CBA's disciplinary provision does not make any of an employee's individual statutory claims subject to the terms of the CBA. *See 14 Penn Plaza*, 556 U.S. at 252. Still, HSD contends that "all claims of whistleblower retaliation are explicitly covered" by the CBA's Article 39 whistleblower protection provision. We disagree. While the whistleblower protection provision of the CBA restates a portion of the nonnegotiable statutory protections that Garcia is entitled to under the WPA, the CBA is devoid of language explicitly requiring an employee to submit violations of the WPA to arbitration or waiving his right to bring a lawsuit for those violations. *See Gardner-Denver*, 415 U.S. at 49-50 (contrasting submitting a grievance to arbitration to vindicate an employee's contractual right under a CBA with filing a lawsuit under Title VII asserting the employee's independent statutory rights). Without this language, we will not require the submission of an employee's independent statutory claims to arbitration. We, therefore, hold that Garcia may properly arbitrate his demotion *and* maintain his lawsuit under the WPA. *See Gardner-Denver*, 415 U.S. at 52 ("Although presumably an employee may waive his cause of action under Title VII as part of a voluntary settlement, mere resort to the arbitral forum to enforce contractual rights constitutes no such waiver." (footnote omitted)).

**C. Collateral Estoppel Applies to Issues Necessarily Decided in a Parallel Judicial Proceeding Where the Presentation of Evidence and Arguments Was Substantially Similar**

{31} As a final note, HSD agrees with the Court of Appeals that, pursuant to *Horne*, Garcia cannot "simply repackage a grievance [he] has elected to arbitrate into a new claim and thereby obtain a second chance at relief" for the same underlying incident. *See Garcia*, A-1-CA-39845, mem. op. ¶ 10 (noting preclusion of a subsequent lawsuit based on "the same underlying incident" where the employee had failed to seek agreement with the arbitrator on "the scope of arbitration"). HSD warns that if Garcia is permitted to proceed with both arbitration and his WPA claim, the result may lead to conflicting decisions between the arbitrator and the district court and "undermine public policy favoring . . . full and final resolution" of all of the disputes between the parties.

{32} These concerns are overstated. Our case law clearly addresses potentially conflicting or duplicative decisions between judicial and arbitration proceedings. *See Rex, Inc. v. Manufactured Hous. Comm. of State of N.M., Manufactured Hous. Div.*, 1995-NMSC-023, ¶ 12, 119 N.M. 500, 892 P.2d 947 (holding that when arbitration affords an opportunity for presentation of evidence and arguments substantially similar to those in a parallel judicial proceeding, "collateral estoppel [should apply] to issues necessarily determined" by arbitration). As the United States Supreme

23

Court acknowledged, "The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." *Gardner-Denver*, 415 U.S. at 60. Consequently, the risk of conflicting decisions is not a persuasive reason to foreclose Garcia's right to bring a lawsuit under the Act—especially where the statutory remedies are broader than those provided for in the CBA.

{33}     We note, however, that plaintiffs proceed at their own peril when electing to advance their claims in multiple forums, and it is entirely possible that an employee will be collaterally estopped if the decision-maker of the second proceeding determines certain previously-decided issues to be duplicative. *Silva v. State*, 1987-NMSC-107, ¶ 6, 106 N.M. 472, 745 P.2d 380 ("Collateral estoppel bars relitigation of ultimate facts or issues actually and necessarily decided in a prior suit. Under collateral estoppel, or 'issue preclusion,' the cause of action in the second suit need not be identical with the first suit." (citation omitted)).

### III.   CONCLUSION

{34}     For the reasons stated above, we reverse the Court of Appeals and affirm the district court's order that, based on the plain meaning of the CBA, Garcia was not required to arbitrate his WPA claims and may proceed with his lawsuit to litigate those claims. We remand this matter to the district court for further proceedings consistent with this opinion.

{35}   **IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Justice**

**WE CONCUR:**

_____
**DAVID K. THOMSON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**C. SHANNON BACON, Justice**

_____
**BRIANA H. ZAMORA, Justice**